[Civ. No. 62169. Second Dist., Div. Two. Dec. 21, 1981.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. AMANDA BALL, Defendant, Cross-complainant and Appellant; JACOB ZODIERU et al., Defendants, Cross-complainants and Respondents.

COUNSEL

Caton & Glazer and Keith Glazer for Defendant, Cross-defendant and Appellant.

Spray, Gould & Bowers, Daniel O. Howard and Richard C. Turner for Plaintiff, Cross-defendant and Respondent.

No appearance for Defendants, Cross-complainants and Respondents.

OPINION

ROTH, P. J.—On January 12, 1978, a pedestrian, Jacob Zodieru, was struck by a vehicle driven by appellant Amanda Ball. Ruth Zodieru, Jacob's wife, was not present at the scene of the accident nor did she suffer any physical injuries as a direct result of it.

At the time of the incident, Amanda was insured by virtue of a policy of insurance issued by respondent State Farm Mutual Automobile Insurance Company. The policy limits applicable to bodily injury coverage were specified in the agreement to be $50,000 each person, $100,000 each occurrence.

Jacob and Ruth Zodieru thereafter filed suit against Amanda; Jacob for bodily injuries and resulting special damages, Ruth for loss of her husband's consortium.

On September 28, 1979, State Farm filed its complaint for declaratory relief, wherein it sought a determination of the amount of coverage available to Amanda respecting Ruth's claim, its own position being that such coverage should not exceed the $50,000 "each person" limit.

The trial court, on State Farm's motion for summary judgment, so decided. This appeal followed.[1] We affirm.

A review of the pertinent provisions of the insurance policy in question provides the framework for our disposition. So, it is initially set out as "Coverage A" under the contract that State Farm agrees "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons . . . ."

It is then specified under the "Limits of Liability" portion of the agreement that, respecting coverage A, "The limit of liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages arising out of bodily injury sustained by one person in any one accident, and subject to this provision, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all such damages for bodily injury sustained by two or more persons in any one accident. For the purposes of this provision the 'bodily injury sustained by one person' as used herein, shall be deemed to include all injury and damages sustained by others as a consequence of such bodily injury."

---

[1] Jacob and Ruth Zodieru were parties to State Farm's suit and they, like Amanda, filed cross-complaints therein, also seeking declaratory relief. The summary judgment, of course, disposed of these as well as State Farm's complaint. No appeal, however, was filed by the Zodierus.

Finally, it is provided in the applicable "Definitions" section that "Damages—wherever used with respect to coverage A includes damages for care and loss of services."[2]

In *United Services Automobile Assn. v. Warner* (1976) 64 Cal. App.3d 957 [135 Cal.Rptr. 34], in a factual setting otherwise substantially identical to that present (except that the initial, direct injury was to the wife rather than to the husband), the limitation of liability provisions of the insurance policy involved specified that: "'The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person as the result of any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the company's liability for all such damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.'"

It was posited there that: "The sole issue argued in this appeal is which policy limit applies to the husband's claim for loss of consortium. Does the claim for loss of consortium arise out of bodily injuries sustained by 'one person' (the wife) so as to make the 'per person' limit applicable; or is the claim for loss of consortium a claim for bodily injury to a second person (the husband) so as to invoke the 'per occurrence' limit for injuries to 'two or more persons as a result of any one occurrence.'" (*Id.*, at p. 961.)

The conclusion reached was that the loss "arose out of" the bodily injury suffered by the person (there the wife) who was involved in the accident. In so deciding the court in *Warner* observed that: "The cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. It is the loss of conjugal fellowship, affection, society and companionship which gives

---

[2]As the quoted language appears in the policy, certain terms are italicized for purposes of reference to definition provisions therein. So, by way of example, the terms "bodily injury," "persons" and "damages" are in this fashion distinguished from other language in the contract.

rise to the cause of action. (*Rodriguez v. Bethlehem Steel Corp., supra*, 12 Cal.3d 382, 405-406 [115 Cal.Rptr. 765, 525 P.2d 669].)

"Although a sensitive person may actually suffer physical illness as a result of being deprived of that conjugal affection, it is not that illness which gives rise to the claim. The fact that loss of consortium may have physical consequences does not convert the cause of action into an action for bodily injury to the spouse suffering the loss. Such consequences would be an element of damage, the consequential damage arising out of the bodily injury to the injured spouse." (*Ibid.*, at pp. 964-965.)

Based upon this analysis, and the fact that in terms of it the language of the policy was not ambiguous, the judgment of the trial court in favor of the higher limit of insurer liability was reversed.

■ Here it is even clearer the "each person" liability limit is appropriate, since there is, in addition to the language found in the *Warner* policy, the further proviso that "For the purposes of this provision the 'bodily injury sustained by one person' as used herein, shall be deemed to include all injury and damages *sustained by others as a consequence of* such bodily injury." (*Italics added.*)

It is nevertheless urged by appellants that *Warner* is not dispositive, in that the decision therein either did not involve or failed to address any question having to do with what, it is said, is present and determinative here, namely the reasonable expectations of the insured at the time the policy agreement was made. Thus it is pointed out Amanda's husband had indicated to State Farm's agent on applying for insurance that he wanted "full coverage," that he expected to receive a policy which would be "both appropriate and adequate," and that he believed the language "$50,000 each person, $100,000 each accident" meant that up to $50,000 would be available to *each person* making a claim arising out of a single accident, to a total possible exposure by State Farm of $100,000 per accident.

We are satisfied, however, the contention cannot be sustained and that of necessity, as respondent suggests, there can be no resort to the doctrine of reasonable expectations in instances, like that at bench, where no ambiguity exists in the language of an insurance contract. While such agreements, because of their otherwise adhesive and technical characteristics, have long been viewed as unique, in that the

presumption persons are familiar with the terms of written contracts to which they are parties and that in the absence of fraud they ordinarily are bound by the provisions therein is not strictly applied to them (see *Raulet* v. *Northwestern etc. Ins. Co.* (1910) 157 Cal. 213, 230 [107 P. 292]), it is not now and never has been true that one may, in the face of clear and explicit terms in the policy, fashion a contrary interpretation binding upon the insurer by virtue of an undisclosed assumption or understanding of what those terms meant. (See *Valdez* v. *Interinsurance Exchange* (1966) 246 Cal.App.2d 1, 7 [54 Cal.Rptr. 906]; *Perkins* v. *Fireman's Fund Indem. Co.* (1941) 44 Cal.App.2d 427, 429 [112 P.2d 670]; *Carabelli* v. *Mountain States L. Ins. Co.* (1935) 8 Cal.App.2d 115, 117 [46 P.2d 1004].)

The judgment appealed from is affirmed.

Compton, J., and Beach, J., concurred.

A petition for a rehearing was denied January 13, 1982, and appellant's petition for a hearing by the Supreme Court was denied March 3, 1982.