745 P.2d 160

Deborah **CAMPBELL**, surviving **widow of Kenneth Campbell, individually and on behalf of Jason Leslie Campbell and Adam Michael Campbell, surviving minor children of Kenneth Campbell, Plaintiffs-Appellants,**

v.

**FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Defendant-Appellee.**

No. 1 CA–CIV 9048.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 6, 1987.

Review Denied Nov. 24, 1987.

Langerman, Begam, Lewis and Marks by Samuel Langerman, Mitchell E. Cohen and Richard W. Langerman, Phoenix, for plaintiffs-appellants.

Holloway & Thomas, P.C. by Paul W. Holloway and Thomas P. Burke II, Phoenix, for defendant-appellee.

HAIRE, Chief Judge.

The sole issue raised in this appeal concerns the interpretation of the each person/each accident limitations of underinsured motorist coverage in a policy issued by the appellee, Farmers Insurance Company of Arizona.

The facts are undisputed. Kenneth Campbell was killed in an automobile accident on January 28, 1984. At that time, he was insured by an automobile liability policy issued by Farmers Insurance Company of Arizona ("Farmers"). The policy provided underinsured motorist coverage with limits of $100,000 for each person and $300,000 for each accident.

Kenneth Campbell was survived by his wife, Deborah Campbell, and two minor sons ("Campbells"). None of the survivors was involved in or witnessed the accident. The surviving Campbells filed a wrongful death action against the adverse driver and settled for his full policy limit of $25,000. The Campbells then sued Farmers seeking a declaratory judgment that each of them was entitled to the "each person" limit of the policy's underinsured motorist coverage, for the total $300,000 "per accident" coverage. Farmers contends that the "each person" limit of liability is the maximum coverage available for all damage claims arising from the injury or death of a single victim[1] and that its maximum liability is therefore $100,000. The parties have stipulated that each of the three surviving Campbells suffered damages in excess of $100,000 by reason of Kenneth Campbell's death, that a minimum of $100,000 was due and owing, and that Farmers has already paid $100,000.

Pursuant to the parties' cross-motions for summary judgment, the trial court granted summary judgment in favor of Farmers, holding that the each person underinsured liability limit ($100,000) applies.

The policy issued to Kenneth Campbell provided underinsured motorist coverage of $100,000 for each person suffering bodily injuries, including death, in a single accident and $300,000 per accident. Part II of the policy, pertaining to uninsured motorist coverage, applies to underinsured motorist coverage as well. It provides:

"The limits of liability shown in the Declarations apply subject to the following:

"1. The limit for 'each person' is the maximum for bodily injury sustained by any person in any one accident. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

"2. Subject to the limit for 'each person,' the limit for 'each accident' is the maximum for bodily injury sustained by

---

1. In this opinion we use the word "victim" to refer to the individual whose injury or death resulted from direct involvement in the motor vehicle accident.

two or more persons in any one accident."

"Bodily injury" is defined in another part of the policy as "bodily injury to or sickness, disease or death of any person."

The Campbells argue that the Farmers policy is ambiguous and therefore must be construed against the insurer. *See Mid-Century Ins. Co. v. Samaniego*, 140 Ariz. 324, 326, 681 P.2d 476, 478 (App.1984). They maintain that the underinsured endorsement does not explain when the $100,000 limit applies or when the $300,000 limit applies. "Bodily injury," they contend, is not adequately defined because it is unclear whether "bodily injury" is limited to physical trauma or also includes psychiatric or psychological trauma. They further urge that under the limits of liability applicable to the underinsured coverage, the word "death" is not mentioned and it is unclear how the stated limits apply when a death is involved. Lastly, they point out that "loss of consortium" is not defined in the policy and that it is a term not commonly understood by persons untrained in law or insurance. Similarly, they suggest that "injury to the relationship" is equally unclear to someone unversed in the law.

The precise question presented is one of first impression in Arizona. *But see Herring v. Lumbermen's Mut. Cas. Co.*, 144 Ariz. 254, 697 P.2d 337 (1985) (concerning uninsured motorist coverage). Despite the many jurisdictions that have considered similar questions concerning the applicability of each person/each accident limitations, we have found none that have considered it in the context of underinsured motorist coverage. *See, e.g., Williams v. Standard Acc. Ins. Co.*, 188 F.2d 206 (5th Cir.1951) (automobile liability coverage); *Montgomery v. Farmers Ins. Group*, 585 F.Supp. 618 (S.D.Ind.1984) (automobile liability coverage); *Smith v. State Farm Mut. Auto. Ins. Co.*, 252 Ark. 57, 477 S.W.2d 186 (1972) (automobile liability coverage); *Abellon v. Hartford Ins. Co.*, 167 Cal.App.3d 21, 212 Cal.Rptr. 852 (1985) (automobile liability coverage); *State Farm Mut. Auto. Ins. Co. v. Ball*, 127 Cal.App.3d 568, 179 Cal. Rptr. 644 (1981) (automobile liability coverage); *United Services Auto. Assoc. v.*

*Warner*, 64 Cal.App.3d 957, 135 Cal.Rptr. 34 (1976) (automobile liability coverage); *Thompson v. St. Paul Fire & Marine Ins. Co.*, 108 Idaho 802, 702 P.2d 840 (1985) (medical malpractice insurance); *Travelers Indem. Co. v. Cornelsen*, 272 Md. 48, 321 A.2d 149 (App.1974) (automobile liability coverage); *Bilodeau v. Lumbermens Mutual Cas. Co.*, 392 Mass. 537, 467 N.E.2d 137 (1984) (automobile liability coverage); *Auto Club Ins. Assoc. v. Lanyon*, 142 Mich.App. 108, 369 N.W.2d 269 (1985) (automobile liability coverage); *New Hampshire Ins. Co. v. Bisson*, 122 N.H. 747, 449 A.2d 1226 (1982) (uninsured motorist coverage); *City of Austin v. Cooksey*, 570 S.W.2d 386 (Tex.1978) (liability under Texas Tort Claims Act); *see generally* Annot., *Construction and Application of Provision in Liability Policy Limiting the Amount of Insurer's Liability to One Person*, 13 A.L.R.3d 1228 (1967); 8A Appleman, *Insurance Law and Practice* § 4893 (1981). The majority of these cases have held that claims for loss of consortium and similar type claims are included within the "each person" limitation.

For example, in *Montgomery v. Farmers Ins. Group*, the United States District Court interpreted an "each person" provision that limited the insurer's liability for bodily injury to "all damages arising out of bodily injury sustained by one person in any one occurrence." 585 F.Supp. at 619. The policy defined "damages" as "includ[ing] damages for care and loss of services." *Id.* It defined "bodily injury" as "bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by a person." *Id.* The court noted that only the husband had sustained bodily injury in the accident and that the wife's claim for loss of consortium was encompassed within the "damages" arising out of her husband's bodily injury. *Id.* Thus, the "each person" limit on bodily injury liability, covering all damages stemming from the injury of one person in one accident, applied to the wife's claim as well. *Id.*

Similarly, in *Williams v. Standard Acc. Ins. Co.*, the Fifth Circuit Court of Appeals

concluded that the policy unambiguously limited its "each person" liability coverage to the person injured or killed in the accident rather than persons who suffer damages as a result of those injuries. 188 F.2d at 208. The "each person" limitation in the policy expressly included "damages for care and loss of services, arising out of bodily injury, including death at any time resulting therefrom, sustained by one person in any one accident." *Id.* at 207, n. 1.

Several California cases have also considered the applicability of each person/each accident liability limitations, with conflicting results. In *United Services Auto. Assoc. v. Warner,* the court held that the "each person" limit precluded a separate claim for loss of consortium. 64 Cal. App.3d at 965, 135 Cal.Rptr. at 38. The policy provided that "[t]he limit of bodily injury liability ... as applicable to 'each person' is the limit of the company's liability for all damages, *including damages for care and loss of services,* arising out of bodily injury sustained by one person...." *Id.,* 64 Cal.App.3d at 961, 135 Cal.Rptr. at 36 (emphasis added). The court concluded that loss of consortium was not equivalent to bodily injury. *Id.,* 64 Cal.App.3d at 965, 135 Cal.Rptr. at 38. Another court reached a similar result in *State Farm Mut. Auto. Ins. Co. v. Ball,* in which the policy stated " 'bodily injury sustained by one person' as used herein, shall be deemed to include *all injury and damages sustained by others* as a consequence of such bodily injury." 127 Cal.App.3d at 572, 179 Cal.Rptr. at 646 (emphasis added).

In *Abellon v. Hartford Ins. Co.,* the court held that *Warner* and *Ball* were not controlling because the policies in those cases contained language qualifying provisions similar to the provisions used in the Hartford policy before it. 167 Cal.App.3d at 30–31, 212 Cal.Rptr. at 858–859. The Hartford policy merely stated that "[t]he most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in this en-

dorsement for 'each person.' " [2] *Id.,* 167 Cal.App.3d at 24–25, 212 Cal.Rptr. at 853. Unlike the policies in *Warner* and *Ball,* the Hartford policy never specifically defined "all damages" as including loss of "services." *Id.,* 167 Cal.App.3d at 31, 212 Cal. Rptr. at 858. The court suggested that an insurer seeking to limit its "per person" liability to include loss of consortium claims should do so expressly. *Id.,* 167 Cal.App. 3d at 33, 212 Cal.Rptr. at 860.

The present case involves underinsured motorist coverage rather than general liability coverage. Every insurer in Arizona is required to offer underinsured motorist coverage in conjunction with general automobile liability coverage. A.R.S. § 20–259.01(C); *Preferred Risk Mut. Ins. Co. v. Tank,* 146 Ariz. 33, 35, 703 P.2d 580, 582 (App.1985). The purpose of underinsured coverage "is to permit the insured to recover for damages caused by a negligent motorist as if the motorist had carried liability insurance" and to protect the insured and his family and passengers against injury caused by another driver with insufficient liability insurance. *Tank,* 146 Ariz. at 36, 703 P.2d at 583. The distinct purpose of underinsured coverage does not, however, affect our analysis of the issue presented in this case. *Cf. Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 579 (5th Cir.1986) ("We are persuaded of no reasoned basis for differentiating between liability and uninsured provisions when considering the per person and per occurrence issue....") The cases hinge primarily on the specific policy language and applicable statutes. *See Bain v. Gleason,* 726 P.2d 1153, 1155 (Mont.1986). None of the cases that we have examined involve policies with language identical to the language involved in the Farmers policy. We must therefore analyze the Farmers policy in the context of Arizona law.

Our analysis is aided by the Arizona Supreme Court's opinion in *Herring v. Lumbermen's Mut. Cas. Co.,* which addressed, in the context of uninsured motorist cover-

---

**2.** The *Abellon* court also held that loss of consortium is a "distinct and individual" injury and that therefore the plaintiff was a second person injured in the accident. 167 Cal.App.3d at 26, 212 Cal.Rptr. at 855.

age, a question similar to that presented here. 144 Ariz. at 255–257, 697 P.2d at 338–340. In *Herring*, three minor children were paid the proceeds from the negligent driver's insurance company for the death of their father. The policy's limit of $15,-000 was divided equally between the three children. The father, at the time of his death, was insured by his own automobile policy, which contained uninsured motorist coverage as required by A.R.S. § 20–259.01. At the time of the father's death, Arizona's financial responsibility law, A.R.S. § 28–1142, required minimum uninsured motorist coverage of $15,000.[3] *See also* A.R.S. § 20–259.01. Because each child received only $5,000 from the negligent driver's insurer, they argued that they were each entitled to an additional $10,000 under their father's uninsured motorist coverage.

The court pointed out that the minimum amount guaranteed by the financial responsibility law ($15,000) had been made available by the insurer. *Herring*, 144 Ariz. at 256, 697 P.2d at 339. The court then stated:

> "[T]he question here is not whether minimum coverage was available for each victim injured or killed in the accident, *but whether each of several beneficiaries of the claim for injury or death of a single victim is entitled to look to uninsured motorist coverage for a guarantee of recovery up to the minimum amount.*" *Id.* (emphasis added).

The court, relying on the nature and purpose of uninsured motorist coverage, stated:

> "That statute [A.R.S. § 28–1142(C)] does not mention a minimum recovery for each person with a damage claim, but only the availability, where 'the accident has resulted in bodily injury or death, [of] a limit ... of not less than fifteen thousand dollars because of bodily *injury to or death of one person* in any one accident....'" *Id.* (emphasis in original).

The court concluded:

> "We believe that the phrase quoted contemplates a minimum limit available

for each person actually injured or killed *and not for each person with a damage claim.* The latter construction would vastly expand the mandated coverage. It would, for instance, allow a wife with a claim for loss of consortium resulting from bodily injury inflicted upon her husband to satisfy her claim from the increased coverage available by statute where there has been injury to or death of 'two or more persons in only one accident.'

\*  \*  \*  \*  \*  \*

> "The statutes, properly interpreted, require that a minimum amount of coverage be available to each person actually injured or killed; .... *There is no requirement that such a fund be available to each person with a derivative damage claim.*" *Id.*, 144 Ariz. at 256–257, 697 P.2d at 339–340 (emphasis added).

*Herring* is not dispositive of the present case because of its reliance on a statute with language differing from the Farmers policy. Nevertheless, its analysis is helpful. As in that case, the amount guaranteed by the underinsured coverage provided for the victim, Kenneth Campbell, has been paid. The question is essentially the same: whether each of several beneficiaries of the death of a single victim has a claim separate from that of the victim, or, in other words, whether claims for "derivative" damages are separate "bodily injury" claims apart from claims for "bodily injury" suffered by the person involved in the accident. The Campbells attempt to distinguish *Herring* because the language of the statute, A.R.S. § 28–1142(C), expressly limits the per person recovery resulting from "bodily injury to or death of *one person* in any one accident." (Emphasis added.) In contrast, they argue that the Farmers policy fails to clearly and unambiguously make this distinction.

Although the language may differ, the *Herring* court's differentiation between the victim and those having "derivative" claims

---

3. A.R.S. § 28–1142 was repealed, effective January 1, 1983. Laws 1982, Ch. 298, § 5.

applies here. Although not as express, the Farmers policy includes derivative type claims within the "each person" limit.

The Campbells argue that they have each suffered "bodily injuries," therefore entitling each of them to a separate claim under the policy coverage and triggering the higher "per accident" rather than the lower "per person" limit. The policy's definition of "bodily injury" is, they suggest, ambiguous. They point out that the common-law definition of bodily injury includes such things as grief, anguish, loss of society, loss of companionship, and loss of support. Because they have undeniably suffered this type of "injury" as a result of Kenneth Campbell's death, they urge that the higher "per accident" limit applies.

Arizona case law has not, however, defined "bodily injury" quite so broadly. In *Bakken v. State Farm Mut. Auto. Ins. Co.*, 139 Ariz. 296, 300, 678 P.2d 481, 485 (App.1983), this court expressly declared that derivative injuries suffered by a surviving husband and sons were *not* bodily injuries. The question before the court was the "stacking" of two claims for uninsured coverage under two different policies for the death of a single insured. In holding that the insurer's "other insurance" exclusion operated to limit its liability for the single insured, the court stated:

> "[T]here is no coverage provided to the plaintiffs in their capacity as insureds because of some injury which they themselves might have received resulting from [decedent's] death. *Whatever their injuries might be, they were not 'bodily injuries.'* The coverage provided is for the 'bodily injury' which another insured, [decedent], received." *Id.* (emphasis added).

*Accord Safeco Ins. Co. v. Simmons*, 642 F.Supp. 305, 308 (N.D.Cal.1986); *Montgomery v. Farmers Ins. Group*, 585 F.Supp. at 619; *United Services Auto. Assoc. v. Warner*, 64 Cal.App.3d at 965, 135 Cal.Rptr. at 38; *Travelers Indem. Co. v. Cornelsen*, 272 Md. at 50, 321 A.2d at 150; *New Hampshire Ins. Co. v. Bisson*, 122 N.H. at 748, 449 A.2d at 1227. *But see Abellon v. Hartford Ins. Co.*, 167 Cal.App.3d at 26,

212 Cal.Rptr. at 855 (loss of consortium is a bodily injury); *Bilodeau v. Lumbermens Mut. Cas. Co.*, 392 Mass. at 543, 467 N.E. 2d at 141 (a loss of consortium claimant is an "injured person" under the terms of the policy); *Allstate Ins. Co. v. Handegard*, 70 Or.App. 262, 264, 688 P.2d 1387, 1388 (1984) (bodily injury defined in policy as including "loss of services"). Although the survivors' injuries might, at least in part, be physical in nature, those injuries were not sustained in the accident. Rather, they were sustained as a result of the bodily injury or death suffered by the person actually involved in the accident. The injuries are derivative from those suffered by the victim. *See Herring*, 144 Ariz. at 257, 697 P.2d at 340. Thus, under Arizona law, the Campbells have not suffered a bodily injury.

Nor do we believe the definition in the policy to be ambiguous or more inclusive. Admittedly, the definition describes "bodily injury" in part as bodily injury. However, we believe the term to be self-explanatory and its meaning obvious to a lay person, especially when read with the remainder of the definition ("sickness, disease or death of any person").

Our interpretation is bolstered by the sentence following the "each person" limit of liability, which provides that claims for "loss of consortium" or "injury to the relationship" arising from the bodily injury are included in the "each person" limit. Neither phrase is used in the definition of "bodily injury," but effect must be given to *all* the provisions of an insurance policy. *See Industrial Indem. Co. v. Goettl*, 138 Ariz. 315, 322, 674 P.2d 869, 876 (App. 1983). Thus, the phrases must have some meaning other than, and in addition to, bodily injury, sickness, disease or death.

The Campbells argue that these phrases are not defined in the policy, that the phrases are unclear and ambiguous, especially to persons untrained in law or insurance, and that unclear or ambiguous terms must be construed against the insurer and in favor of the insured. *See Roberts v. State Farm Fire & Cas. Co.*, 146 Ariz. 284, 285–286, 705 P.2d 1335, 1336–1337 (1985).

While we find little ambiguity here, we note that the ambiguity doctrine urged by the Campbells has been to a large extent abandoned by the Arizona Supreme Court. As stated by Justice Feldman in *Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355, 694 P.2d 181, 185 (1984):

> "Of course, a finding of ambiguity is the easy way out since it permits the court to create its own version of the contract and to find, or fail to find, ambiguity in order to justify an almost predetermined result. This is an approach which we have abandoned. [Citation omitted.] We believe the proper methodology is to determine the meaning of the clause—where it is susceptible to different constructions —by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole." *See also, Arizona Property and Casualty Ins. Guaranty Fund v. Helme*, 153 Ariz. 129, 134–135, 735 P.2d 451, 456–457 (1987).

Although the phrase "loss of consortium" is probably not familiar to most members of the lay public, consortium means "love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations." *Frank v. Superior Court*, 150 Ariz. 228, 229 n. 1, 722 P.2d 955, 956 n. 1 (1986), *citing* Note, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal*, 13 S.D.L.Rev. 231, n. 3 (1975); *see also Reben v. Ely*, 146 Ariz. 309, 311, 705 P.2d 1360, 1362 (App. 1985). In the context in which it is used here, we believe a meaning other than bodily injury is apparent. Its use in conjunction with "injury to the relationship" triggers an interpretation similar to its actual meaning.

The Campbells also assert that "injury to the relationship" is unclear and ambiguous. The intended meaning of this phrase, however, is readily apparent and, on its face, is not ambiguous; it must therefore be interpreted according to its ordinary meaning. *Mid-Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982).

The obvious intent of the policy was to include claims for loss of consortium and injury to the relationship in the "each person" limit. In our opinion this intent was clearly expressed. We conclude that in the context in which they are used, neither "loss of consortium" nor "injury to the relationship" are unclear or ambiguous. Because these are the types of damages suffered by the Campbells, the "each person" limitation applies.

## CONCLUSION

Although the Campbells suffered damages as a result of the accident, they did not suffer bodily injuries separate and apart from those suffered by the deceased. Their claims are limited to those for loss of consortium or injury to the relationship, which are encompassed within the "each person" limit of underinsured coverage rather than the "each accident" limit.

The judgment entered by the trial court is affirmed.

JACOBSON, P.J., and GREER, J., concur.