**FARMERS INSURANCE EXCHANGE,**
a foreign insurance exchange,
Appellant (Defendant),

v.

**Byron DAHLHEİMER, as personal representative of the Estate of Anne Foley, deceased, Appellee (Plaintiff).**

No. 98–111.

Supreme Court of Wyoming.

April 5, 2000.

Representing Appellant: George E. Powers, Jr. and John A. Coppede of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming.

Representing Appellee: Michael R. O'Donnell of Burke, Woodard & O'Donnell, P.C., Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The only question in this appeal is whether each of the survivors of a decedent who had contracted for uninsured motorist coverage qualified as an insured person so as to invoke the $300,000 limit of coverage for an occur-

* Retired November 2, 1998.

rence rather than the $100,000 limit of coverage for a person. The district court ruled that each of the survivors was an insured under the policy and that the higher $300,000 limit would apply. We interpret the specific provision of the policy dealing with the uninsured motorist coverage as limiting the coverage to bodily injuries sustained by the insured person. We hold that the policy language is clear and unambiguous and that the individual survivors did not sustain bodily injuries. The coverage is limited to $100,000. The Order Granting Summary Judgment to Plaintiffs is reversed, and the district court is instructed to enter judgment in favor of Farmers Insurance Exchange.

This statement of the issues is found in the Brief of Appellant, filed by Farmers Insurance Exchange (Farmers):

> Did the district court commit error, when it determined that Appellee/Plaintiff was entitled to collect uninsured motorist coverage up to the "each occurrence" limit rather than the "each person" limit in a claim arising out of an automobile accident resulting in one death?

This Statement of the Issues is found in the Brief of Appellee, filed on behalf of Byron Dahlheimer (Dahlheimer), the personal representative of the estate of the deceased person:

> 1. If Farmers['] policy in this case is unambiguous, was the District Court correct that it provides coverage to multiple wrongful death claimants at the "each occurrence" limits of liability?
>
> 2. If Farmers['] policy in this case is ambiguous, must the policy, in any event, be construed in favor of the insureds to provide coverage to multiple wrongful death claimants at the "each occurrence" limits of liability?

On October 30, 1996, the decedent died in an automobile accident caused by an uninsured driver. The decedent was insured under a policy issued by Farmers, and the policy included uninsured motorist coverage. The limits of liability for the uninsured motorist coverage are $100,000 for each person and $300,000 for each occurrence. Surviving the decedent were her son, her parents, and six siblings. Under our Wyoming statutes, Wyo. Stat. Ann. §§ 1–38–101 through 1–38–102 (Lexis 1999), each of these survivors would be entitled to prove damages in a wrongful death action against the uninsured driver. Dahlheimer is the personal representative of the decedent's estate, and he instituted this action in that capacity.

Farmers paid the $100,000 per person policy limit, but Dahlheimer contends that the $300,000 policy limit for each occurrence is the appropriate amount. Dahlheimer's contention is based upon the proposition that there are multiple survivors and that each of them qualifies as an "insured person" under the policy definitions. Farmers agreed that the damages attributable to the death of the decedent are at least $300,000.

On October 14, 1997, Dahlheimer filed a Complaint for Declaratory Judgment in the district court, asking the court to decide the issue of the appropriate liability limit under the policy. In the district court, the parties stipulated to the material facts of this case, and there is no dispute relating to the facts. Since the facts were stipulated, the parties then filed cross-motions for summary judgment. A hearing on those motions was held on January 16, 1998, and the district court granted a summary judgment in favor of Dahlheimer on January 30, 1998. Farmers' appeal is taken from the Order Granting Summary Judgment to Plaintiffs.

■ In this case, the stipulation of the parties forecloses any factual dispute, and in accordance with our protocol for reviewing summary judgments granted pursuant to W.R.C.P. 56, we determine only whether the district court properly applied the law in ordering the summary judgment. *Cities Service Oil and Gas Corp. v. State*, 838 P.2d 146, 150 (Wyo.1992). Our review requires us to interpret the policy insuring the decedent under our usual rules of contract interpretation because we treat insurance policies as contracts. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993). The rule we apply was articulated in *Arnold v. Mountain West Farm Bureau Mut. Ins. Co., Inc.*, 707 P.2d 161, 166 (Wyo.1985):

> If a contract is clear on its face, we must assume it reflects the intent of the parties.

*Schacht v. First Wyoming Bank, N.A.–Rawlins*, Wyo., 620 P.2d 561 (1980). We are not free to rewrite contracts under the guise of interpretation. *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.*, Wyo., 676 P.2d 560 (1984). So long as there is no ambiguity, we are bound to apply the contract as it is written. *Rouse v. Munroe*, Wyo., 658 P.2d 74 (1983).

This case presents a novel question in Wyoming, and the arguments presented by Dahlheimer are both ingenious and forceful. Dahlheimer and Farmers argue that in resolving the issue in this case, we must begin with and focus on the language of the policy. As identified by the parties, some of the important definitions and conditions in the policy are:

*Insured person* means:

a.  You or a family member.

b.  Any other person while occupying your insured car.

c.  Any person for damages that person is entitled to recover because of bodily injury to you, a family member, or another occupant of your insured car.

*Bodily injury* means bodily injury to or sickness, disease or death of any person.

*Damages* are the cost of compensating those who suffer bodily injury or property damage from an accident.

(Emphasis in original.) The word "you" in the policy refers to the named insured, the decedent, and the word "we" refers to Farmers. In the section of the policy providing uninsured motorist coverage, "Coverage C," the policy provides, "[w]e will pay all sums which an *insured person* is legally entitled to recover as *damages* from the owner or operator of an *uninsured motor vehicle* because of *bodily injury* sustained by the *insured person*." (Emphasis in original.) The limits of liability under the uninsured motorist section of the policy are stated in this way:

1.  The limit for "each person" is the maximum for bodily injury sustained by any person in any one occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

2.  Subject to the limit for "each person" the limit for "each occurrence" is the maximum combined amount for bodily injury sustained by two or more persons in any one occurrence.

◼ Our analysis of "Coverage C" begins with the statement of Farmers' obligation pursuant to which it agrees to "pay all sums which an insured person" could recover as damages from the operator of an uninsured motor vehicle "because of bodily injury sustained by the insured person." The limitations provide that Farmers is required to pay only in the event of bodily injury, and that it is not obligated to pay more than the "each person" amount unless more than one person has sustained bodily injury. Farmers does not question that the decedent sustained bodily injury because of her death in the accident. The focus of the debate then is not whether anyone other than the decedent sustained a bodily injury. Rather, it is whether the definition of an "insured person," specifically subparagraph c. of that definition, in conjunction with the obligation of Farmers under "Coverage C," leads to the conclusion that Farmers' obligation is properly construed to read:

We will pay all sums which [any person who is entitled to recover damages because of bodily injury to the decedent] is legally entitled recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by [the decedent].

◼ Farmers' argument emphasizes that the only bodily injury sustained was the death of the decedent. The ruling of the district court, however, apparently was premised upon the proposition that the definitions provisions could be applied in the manner suggested above. The district judge did not specify the basis for his decision, but he did say to Dahlheimer's attorney, "my reading of the policy is consistent with what you've argued." We can and will affirm a summary judgment on any proper legal theory disclosed by the record, and we address all of the arguments presented by Dahlheimer to sustain the judgment of the district court. *Century Ready–Mix Co. v. Campbell County School Dist.*, 816 P.2d 795, 799 (Wyo.1991)

*(quoting Reeves v. Boatman,* 769 P.2d 917, 918 (Wyo.1989)).

Dahlheimer argues that if the policy is read to permit only the insured individual to collect for damages because of bodily injury sustained by the insured, the decedent's survivors could not recover unless they sustained a bodily injury themselves. The thrust of this reasoning is that if the policy is construed as Farmers argues, the survivors would be entitled to no recovery. This argument is fallacious with respect to the interpretation of the language in "Coverage C." The district court substituted language into "Coverage C," and it arrived at the following statement:

> We will pay all sums which *a family member* is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of the *death* sustained by the *insured person*.

(Emphasis added.)

This construction is premised on a conclusion that the words "insured person" appearing in the obligation assumed by Farmers under "Coverage C" describe different persons. Construing the language in that fashion disregards the use of the indefinite article "an" in connection with the first reference to "insured person" and the definite article "the" used in the second reference to the "insured person." The definite article demonstrates that the second reference is to the "insured person" previously identified in that sentence. "An insured person" legally entitled to recover can be any insured person as defined by the policy, but with respect to "Coverage C," "the insured person" sustaining bodily injury must be the same person as the one legally entitled to recover. Thus, the sentence providing coverage correctly is read as:

> [*Farmers* ] will pay all sums which a [*decedent* ] is legally entitled to recover as damages from the owner or operator of an

uninsured motor vehicle because of [*death* ] sustained by [*the decedent* ].

(Emphasis added.) The thrust of this interpretation is that Farmers met its responsibility by paying the $100,000 to which an injured person would be entitled because of bodily injury to that injured person. The survivors of the decedent, under this construction did not sustain bodily injury, and we cannot affirm the summary judgment entered by the district court unless we find it supported in some other way.

■ Dahlheimer cites *Savoie v. Grange Mut. Ins. Co.,* 67 Ohio St.3d 500, 620 N.E.2d 809 (1993). In that case, the court held that each survivor who was entitled to bring a wrongful death action could collect up to the limit for each person, subject to the overall occurrence limit. *Id.* at 812–13. The Ohio court did not rule that each survivor had sustained a bodily injury. Instead, the Ohio court turned to a portion of the state's wrongful death statute that provided that each survivor is rebuttably presumed to have suffered damages.[1] *Id.* at 812. The Ohio Supreme Court continued with an explanation that the Constitution of the State of Ohio says:

> The amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law. Art. I, § 19a.

*Savoie,* 620 N.E.2d at 812. The Ohio Supreme Court reached inconsistent conclusions that the constitutional provision precluded any per person limitation in a wrongful death claim, but it assumed that, under the same constitutional language, the limitation per occurrence would still apply. *Id.* at 813. The then Chief Justice of the Ohio Supreme Court dissented, pointing out that the phrase "by law" in the constitutional provision was addressed to limitations imposed on liability by statute, but did not reach limitations set forth in private con-

---

1. The wrongful death statute in Wyoming encompasses no such presumption, and this Court has never previously inferred such a presumption. Instead, each person entitled to participate must establish damages.

> Every person for whose benefit such action is brought may prove his respective damages,

and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

Wyo. Stat. Ann. § 1–38–102(c).

tracts such as insurance policies. *Id.* at 821. The Chief Justice noted the inconsistency and asserted that if a limitation per person is unconstitutional, then a limitation per occurrence also must be unconstitutional. He then pointed out that the majority had not hesitated to enforce the per occurrence limitation. *Id.* at 821. The next event in Ohio, a response to *Savoie,* was the enactment by the Ohio legislature of Am. Sub. S.B. No. 20, which "explicitly allows automobile insurance policies to treat all claims for bodily injury to a person as a single claim." *Smith v. Mancino,* 119 Ohio App.3d 418, 695 N.E.2d 354, 355 (1997). It follows that even in the courts of Ohio, Dahlheimer's claim would not be sustained.

■ In another argument, Dahlheimer relies upon *Treichel v. State Farm Mut. Auto. Ins. Co.,* 280 Mont. 443, 930 P.2d 661 (1997). In *Treichel,* the court ruled that a wife could recover a separate per person amount for negligent infliction of emotional distress after witnessing the accident in which her husband lost his life. *Id.* at 665. The rationale invoked by the court was that the wife herself was an injured person, and that negligent infliction of emotional distress was not derivative of the injury to her husband. *Id.* The facts in that case distinguish it from the arguments of Dahlheimer. Had any of the survivors of the decedent in this case witnessed the accident in which the decedent was killed, the *Treichel* reasoning could be applied. The district court in Montana had explained that the wife's claim arose "out of the traumatic personal impact upon her own emotional and physical well-being by actually and immediately experiencing the accident which killed her husband directly in front of her." *Id.* at 663. The Montana Supreme Court, however, conceded that derivative claims still were subject to the limit of liability for injury to each person. *Id.* at 665. Our law in Wyoming is consistent with the concession by the Montana court in that wrongful death claims are derivative claims in Wyoming. *Edwards v. Fogarty,* 962 P.2d 879, 883 (Wyo.1998). *See Anderson v. Solvay Minerals, Inc.,* 3 P.3d 236, 237 (Wyo. 2000). Our conclusion is that under the circumstances presented by Dahlheimer, the Montana court would invoke the per person limitation set forth in the policy language.

Neither *Savoie* nor *Treichel* serves to justify the summary judgment entered by the district court. Neither is helpful in determining whether the survivors represented by Dahlheimer can be perceived as fitting within the definition of coverage found in "Coverage C." We have canvassed other jurisdictions with respect to this particular problem. In *Campbell v. Farmers Ins. Co. of Arizona,* 155 Ariz. 102, 745 P.2d 160 (1987), the court considered a policy encompassing the same limitations of liability and the same definitions as the policy before us. In that case, the surviving spouse and children of the decedent each sought to recover up to the per person limitation. *Id.* at 161. The Arizona court held that the several claimants had not sustained bodily injury, but that their claims were derivative of the injuries suffered by the decedent. *Id.* at 165. In an earlier decision, another court in Arizona considered substantially identical language, and said:

> [T]here is no coverage provided to the plaintiffs in their capacities as insureds because of some injury which they themselves might have received resulting from (the decedent's) death. Whatever their injuries might be, they were not "bodily injuries." The coverage provided is for the "bodily injury" which another insured, (the decedent), received.

*Bakken v. State Farm Mut. Auto. Ins. Co.,* 139 Ariz. 296, 678 P.2d 481, 485 (1983). *See also Green v. Mid–America Preferred Ins. Co.,* 156 Ariz. 265, 751 P.2d 581, 584 (1987) (holding "[u]nless the [claimants] can show they suffered bodily injuries in the accident in which [decedent] was killed, the 'each person' limit applies, since only one person * * * suffered bodily injury or death.").

A California court reach a similar result, although applying a different rationale. *Hauser v. State Farm Mut. Auto. Ins. Co.,* 205 Cal.App.3d 843, 252 Cal.Rptr. 569 (1988). Hauser died in an automobile accident, and his spouse endeavored to collect up to the each occurrence limitation of the policy coverage. *Id.* at 570. It is to be noted that *Hauser* did not involve non-insured motorist coverage. The policy language provided for

recovery up to the each occurrence limit for "bodily injury to two or more persons in the same accident." *Id.* at 571 n. 1. The language in the policy considered in *Hauser* was similar to the language in the policy relied upon by Dahlheimer, which allows recovery up to the each occurrence limit for "bodily injury sustained by two or more persons in any one occurrence." The court in California held:

> This definition of "each accident" implicitly distinguishes between a person harmed *in* the accident, and one harmed only as a result of injuries sustained by one *in* the accident. Since the (claimant) was not *in* the accident, but only harmed as a result of injuries sustained *in* the accident by (the decedent), the policy limits her recovery for damages to that applicable to "each person."

*Hauser,* 252 Cal.Rptr. at 571 n. 1 (emphasis in original).

The Supreme Court of Nevada extended the rationale articulated in *Hauser* to uninsured motorist coverage in *Nationwide Mut. Ins. Co. v. Moya,* 108 Nev. 578, 837 P.2d 426 (1992). The Nevada court agreed that the each person limit was invoked if only one insured individual was injured in the accident, regardless of the number of persons who might have suffered damage. *Id.* at 430. In Oklahoma, a federal court ruled that the each person limit "refers to the person actually physically injured in the automobile accident." *Economy Fire & Cas. Co. v. Faulkner,* 790 F.Supp. 1082, 1084 (W.D.Okla.1991). The court explained:

> To extend the meaning of "each person" to the injured person's parents, spouse, children, or others who could conceivably bring a cause of action against a tortfeasor for the injuries of the claimant would gut the purpose of the "each person" and "each accident" provisions.

*Faulkner,* 790 F.Supp. at 1084.

In New Mexico, recovery is limited for death to the per person limitation in conjunction with a wrongful death statute that is very similar to the Wyoming statute. *Lewis v. Dairyland Ins. Co.,* 113 N.M. 686, 831 P.2d 985 (1992). The New Mexico wrongful death statute provides:

> Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, * * * and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain *an action* and recover damages in respect thereof, then * * * the person who * * * would have been liable, if death had not ensued, shall be liable to *an action* for damages, notwithstanding the death of the person injured.

*Lewis,* 831 P.2d at 987 (emphasis in original). The Supreme Court of New Mexico agreed with the insurer's assertion that "a wrongful death gives rise to one indivisible claim that is * * * subject to the per-person limit of liability." *Id.* at 987. The New Mexico court decided that the reference to a single action for wrongful death means that wrongful death claimants have a single collective right of action. *Id.* That action, like the wrongful death action in Wyoming, is described as invoked in a situation in which the person would have been entitled to maintain an action to recover damages if the person had not died, and, of course, the action by the injured person would have been limited to the per person recovery described in the policy. *Id.*

Two treatises on automobile insurance report that the per person limitation is the appropriate result in a case such as this. One dealing specifically with uninsured motorist coverage states, "courts have almost uniformly held that the liability of an insurance company for either direct or consequential damage claims is subject to the insurance policy limit of liability for bodily injuries to one person as a result of one accident." Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 6.4 (2d ed.1992). A general treatise on automobile liability insurance agrees and expresses the proposition in this language, "the great majority of the courts have held that consequential and derivative loss claimants who were not themselves physically injured in the accident did not sustain separate bodily injury within the contemplation of the policy language." Irvin E. Schermer, *Automobile Liability Insurance 3d* § 44.03[1] at 44–6 (1995). In addition, Schermer explains:

The right to recover consequential and derivative losses is recognized by the insurer, but at the same time is exercisable only under the single injury limits restrictions of the policy. The fact of only a single death insulates the insurer against "per accident" liability according to a majority position.

Irvin E. Schermer, *Automobile Liability Insurance 3d* § 44.03[1] at 44–8.

In his second approach to resolution of this problem identified by the second issue quoted above, Dahlheimer asserts that if the policy is not read according to his interpretation, it must be perceived as ambiguous and we should afford a construction in favor of the insured. Dahlheimer argues that there is ambiguity to be found in the second sentence of the language describing the per person limitation, which says, "[a]ny claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit." Dahlheimer's point is that the phrase "injury to the relationship" could be construed as either an explanation of the phrase "loss of consortium" or as a separate claim for damages.

Dahlheimer has not persuaded this Court that this policy is ambiguous. We have said "[a]n ambiguity is not created by the subsequent disagreement of the parties regarding the contract's meaning." *Frost Const. Co. v. Lobo, Inc.*, 951 P.2d 390, 394 (Wyo.1998) (*citing Svalina v. Split Rock Land and Cattle Co.*, 816 P.2d 878, 881 (Wyo.1991)). The phrase "loss of consortium or injury to the relationship" unambiguously describes two separate concepts. At the beginning of the policy, Farmers set forth an extensive list of definitions, and additional section-specific definitions are included as appropriate. If the policy was intended to define "loss of consortium" as "injury to the relationship," we conclude that the policy would have done so explicitly. There is no place in the policy that a word or term is defined without labeling it as a definition. Furthermore, when the word "or" appears in the policy, it denotes that the items are not the same. It is not a plausible construction that in one isolated instance the intention articulated in the policy was to use "or" to indicate that the two

phrases have an identical meaning. In *Campbell*, the court dealt with a similar contention of ambiguity. *Campbell*, 745 P.2d at 165. As in this case, the claimants in *Campbell* argued that the phrases "loss of consortium" and "injury to the relationship" were "unclear and ambiguous, especially to persons untrained in law or insurance." *Id.* The court held that the phrases, as they were used in the context of the policy, were neither unclear nor ambiguous. *Id.* at 166.

Although Dahlheimer, on behalf of the survivors, clearly is entitled to recover damages because of the death of the policy holder, none of the survivors suffered bodily injuries. The only insured who sustained bodily injury was the decedent. The unambiguous language of this policy, limits claims arising from that death to the per person limitation on liability. A contrary holding would render meaningless the per person limitation in a death case unless there were only three or less than three survivors. To adopt Dahlheimer's interpretation would leave an inconsistency in our law in that an injured person would be limited to the per person recovery, but that limitation would be disregarded in the instance in which the injured person died. The Court is satisfied that the majority rule represents the better policy for the State of Wyoming.

Reversed and remanded for entry of a judgment in favor of Farmers Insurance Exchange.