751 P.2d 581

Anita GREEN, Surviving Spouse of Edward W. Green, Deceased, on Behalf of Anita Green, Widow of Edward W. Green; and Dana Green and Evan Green, Surviving Children of Edward W. Green, Deceased, Plaintiffs-Appellants,

v.

MID-AMERICA PREFERRED INSURANCE COMPANY, an Insurance Corporation Authorized to do Business in Arizona, Defendant-Appellee.

No. 1 CA-CIV 9287.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 3, 1987.

Review Denied April 5, 1988.

G. David Gage, Ltd. by G. David Gage, Phoenix, for plaintiffs-appellants.

Holloway & Thomas, P.C. by Benjamin C. Thomas and Thomas P. Burke II, Phoenix, for defendant-appellee.

## OPINION

SHELLEY, Presiding Judge.

This appeal raises questions concerning the each person/each accident provision of underinsured motorist coverage included in a policy issued by the appellee, Mid–America Preferred Insurance Company (Mid–America).

The facts are undisputed. Edward Green was killed in a motorcycle accident on December 20, 1984. He is survived by his wife and two adult children. All of the Greens lived in the same household at the time of the accident. The other driver involved in the accident had a total of $25,000 liability coverage, which was paid to the Greens.

At the time of the accident, the Green family owned three cars that were insured by Mid-America. The Mid–America policy included underinsured motorist coverage in the amount of $100,000 for each person and $300,000 for each accident. All of the Greens were listed as authorized drivers.

The policy given to the Greens did not contain a copy of the "Underinsured Motorists Coverage Endorsement." The policy did contain, however, an endorsement entitled "Split Underinsured Motorists Limits" that stated in pertinent part:

The first paragraph of the Limit of Liability provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:

LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for 'each person' for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one accident. Subject to this limit for 'each person', the limit of liability shown in the Schedule or in the Declarations for 'each accident' for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident....

The $100,000 each person and $300,000 each accident amounts were set forth on the declarations page.

The Greens filed a declaratory action in superior court alleging that they are each entitled to $100,000 of underinsured coverage, for the total $300,000 "each accident"

coverage. Mid–America at first claimed that its policy did not extend underinsured motorist coverage to the motorcycle upon which Edward Green was killed. It ultimately conceded, however, that at least $100,000 underinsured coverage was payable as a result of the accident.[1] Upon the parties' cross motions for summary judgment, the trial court held that Mid–America's coverage was limited to $100,000. This appeal followed.

The Greens raise the following issues: (1) Part of the policy was not provided to the Greens, and therefore the $100,000 "each person" limit does not apply; (2) The "dickered deal" for underinsured coverage provides each of the Green family survivors with $100,000 underinsured coverage, so that the $300,000 each accident limit applies; (3) The $100,000 underinsured coverage limitation is contrary to the Greens' reasonable expectations; and (4) The $100,000 coverage limitation is not authorized by A.R.S. § 20–259.01 and is therefore void as against public policy.

In *Campbell v. Farmers Ins. Co. of Arizona,* 155 Ariz. 102, 107, 745 P.2d 160, 165 (App.1987), *petition for review filed,* August 21, 1987, this court held that the "each person" amount of underinsured motorist coverage was the maximum underinsured coverage available where the insured decedent was survived by his wife and two children. As in this case, the survivors in *Campbell* claimed they were entitled to the "each accident" amount because they each suffered damages as a result of the decedent's death. The issue was whether the survivors of a single victim in an accident each have a claim separate from that of the victim, or in other words, whether claims for derivative damages are separately covered injuries apart from those suffered by the victim. At 107, 745 P.2d at 165. This court concluded that "loss of consortium," and "injury to the relationship" damages, the type of damages suffered by the surviving Campbells, although real injuries, were not "bodily injuries" within the operative policy language. *Id.* at 108, 745 P.2d at 166; *see also Bakken v. State Farm Mut. Auto. Ins. Co.,* 139 Ariz. 296, 300, 678 P.2d 481, 485 (App.1983). Thus, the survivors' damages were *derivative* claims, as opposed to bodily injuries suffered by the victim. *See also Herring v. Lumbermen's Mut. Cas. Co.,* 144 Ariz. 254, 697 P.2d 337 (1985) (concerning uninsured motorist coverage). The court's conclusion was bolstered by the policy language which expressly declared that "any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this [each person] limit." *Campbell,* 155 Ariz. at 103, 745 P.2d at 161.

The court relied heavily on the reasoning in an Arizona Supreme Court case, *Herring v. Lumbermen's Mut. Cas. Co.,* 144 Ariz. 254, 697 P.2d 337, even though *Herring* concerned uninsured motorist coverage and an interpretation of the versions of A.R.S. §§ 20–259.01(A) and 28–1142(C) in effect at that time.[2] Arizona Revised Statutes § 20–259.01(A) had required uninsured coverage in the amounts set forth in § 28–1142(C), which required "each person" coverage of "not less than fifteen thousand dollars because of *bodily injury to or death of one person in any one accident.*" (emphasis added). The *Herring* court concluded that § 28–1142(C)

---

1. Mid–America apparently conceded that there was at least some coverage when it learned that the Underinsured Motorists Coverage Endorsement, which purported to exclude underinsured coverage on vehicles other than those specifically covered by the policy, had not been included with the policy given to the Greens. *See also Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 697 P.2d 684 (1985) ("other vehicle" exclusion with respect to uninsured motorist coverage invalid); *State Farm Mut. Auto. Ins. Co. v. Jannsen,* 742 P.2d 1372 (Ariz.App.1987), *pet. for rev. denied,*

Sept. 15, 1987; *but see Mason v. State Farm Mut. Auto. Ins. Co.,* 148 Ariz. 271, 714 P.2d 441 (App. 1985) ("other vehicle" exclusion with respect to underinsured coverage *not* against public policy).

2. A.R.S. § 28–1142 was repealed in 1982. Laws 1982, Ch. 298, § 5, effective January 1, 1983. A.R.S. § 20–259.01 was amended in 1981, Laws 1981, Ch. 224, § 1, and again in 1982. Laws 1982, Ch. 298, § 1.

"contemplates a minimum limit available for each person actually injured or killed and *not for each person with a damage claim.*" 144 Ariz. at 256, 697 P.2d at 339 (emphasis added.) The policy in *Campbell,* we concluded, made the same distinction, although the policy utilized different language than the statute. *Campbell,* 155 Ariz. at 107, 745 P.2d at 165. In contrast, the Mid–America policy limits the amount of "each person" underinsured coverage to "any one person in any one accident," virtually the identical language in A.R.S. § 28–1142(C), upon which the *Herring* court relied. Thus, both *Herring* and *Campbell* are controlling with respect to the interpretation to be given the Mid–America policy.

In addition, the limit of underinsured liability in the Mid–America policy for "each person" is the "maximum limit of liability for all damages for *bodily injury* sustained by any one person in any one accident." (Emphasis added). Bodily injury does not include damages for grief, anguish, loss to society, loss of companionship or loss of support. *Campbell,* at 107, 745 P.2d at 165; *see also Bakken,* 139 Ariz. at 300, 678 P.2d at 485. Unless the Greens can show they suffered bodily injuries in the accident in which Edward Green was killed, the "each person" limit applies, since only one person—Edward Green—suffered bodily injury or death.

Although *Campbell* and *Herring* are dispositive of the interpretation to be given the Mid–America policy, the Greens raise several arguments, that were not addressed in those cases. We turn now to those arguments.

### MISSING ENDORSEMENT

Mid–America failed to include the "Underinsured Motorists Coverage Endorsement" with the policy given to the Greens. It did provide a "Split Underinsured Motorists Limits" endorsement that expressly replaced the paragraph explaining the each person/each accident limits in the missing endorsement. The amount of coverage is stated on the declarations page. The "Split Underinsured Motorists Limits" explains how the each person/each accident limitation set forth on the declarations page actually applies. The paragraph reads as a whole, it is not broken up in any form, and there is no indication that the inclusion of the superseded endorsement would help clarify or otherwise affect the meaning of the endorsement that the Greens received. The Greens do not claim they were prejudiced in any manner by the absence of the endorsement and offer no support for their position that the new endorsement is a nullity. We conclude that the provision was a part of the policy and was in effect.

### DICKERED DEAL AND REASONABLE EXPECTATIONS

The Greens argue that the dickered deal regarding underinsured coverage was that *each* of the three surviving Greens would be entitled to $100,000 of underinsured coverage. They rely on *State Farm Mutual Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986), which held that the language in an insurance policy that the customer "is not ordinarily expected to read or understand ought not to be allowed to contradict the bargain made by the parties," and that the declarations page is evidence of the "dickered deal," which cannot be contradicted by the policy boilerplate. 149 Ariz. at 151, 717 P.2d at 555. (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 391–92, 682 P.2d 388, 396–97 (1984)).

The declarations page sets forth the basic coverages provided in the policy, the amounts of each coverage and the costs thereof. There is no explanation on the declarations page of how and when underinsured coverage is extended. The insured must therefore look to the "Split Underinsured Motorists Limits" endorsement for an explanation of how the each person/each accident provision on the declarations page applies. It does not undercut the coverage provided on the declarations page—it merely explains the distinction between "each person" and "each accident" coverage.

It is neither possible nor practical to include every detail of coverage on a declarations page; thus endorsements, such as the underinsured endorsement at issue, are used. The each person/each accident distinction on the declarations page would be meaningless without a referral to and explanation in the endorsement, or boilerplate. It is a universal principle that insurance policies must be read as a whole. *Bogart*, 149 Ariz. at 153, 717 P.2d at 457.

■ Also relying on *Bogart*, the Greens argue that the typed declarations page must prevail over conflicting or confusing boilerplate. Although we agree with this principle, *see, e.g., Babbitt Bros. Trading Co. v. Marley*, 28 Ariz. 589, 238 P. 392 (1925), as discussed above, the boilerplate is neither conflicting nor confusing. *See Campbell; Herring*. It must therefore be given effect.

The Greens also suggest that the "each person" limitation of $100,000 is contrary to their reasonable expectations and is therefore unenforceable. They rely on their affidavit, which states that they "understand" the typed declarations page to mean they each have $100,000 worth of underinsured coverage and that they do not understand the boilerplate. They do not claim, however, that they did not read the boilerplate.

In *Darner*, the insurer's express representations of coverage were contradicted by the actual terms of the policy. The Arizona Supreme Court expressly adopted the rule set forth in the *Restatement (Second) of Contracts* § 211 comment f (1981), which provides, in part, that "[a]lthough customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation...." *Id.; Darner, supra*, 140 Ariz. at 391, 682 P.2d at 396. The court ultimately held that in situations where it is improbable that an insured will read or understand a policy's boilerplate, the boilerplate cannot contradict the insurer's express representations.

*Darner*, in practice, has not been limited to its facts. *See Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266 at 272, 742 P.2d 277, 283 (1987). Thus, in *Bogart*, the supreme court took *Darner* one step further and held that the negotiated or dickered deal between an insurer and insured as reflected in the declarations page cannot be undercut or offset by the policy's boilerplate. The declarations page in *Bogart* indicated that the insured had purchased $300,000 of non-owned coverage, but buried ten pages later in the policy was a provision under a heading entitled "policy conditions," which excluded that coverage to rented vehicles. The court concluded:

Given the clear indication of coverage in the declaration page of the policy, the lack of any exclusion in the exclusion portion of the policy, the non-standard nature of this other insurance clause, its location under 'policy conditions' and the necessity to consult the definition clause in order to determine applicability, we cannot say that the trial court erred in concluding that the exclusion relied on by State Farm was ambiguous when the policy is considered as a whole, as it must be....

\* \* \* \* \* \*

*For similar reasons, we believe it quite clear that the clause in question also significantly modifies the 'dickered deal'....*

*Id.* 149 Ariz. at 153, 717 P.2d at 457 (Citations omitted; emphasis added).

■ Applying the foregoing concepts to the Mid–America policy, we conclude that it is unambiguous *and* within the range of reasonable expectation. The insured is alerted to the "each person/each accident" distinction on the face of the declarations page. Thus, it is part of the dickered deal. This can be contrasted with *Gordinier v. Aetna Cas. & Sur. Co.*, in which the insurance application gave no indication that only one spouse would be the named insured, which would result in unequal coverage of the spouses, and the provisions resulting in the unequal treatment were scattered all over the policy. *Gordinier*, 154 Ariz. at 273, 742 P.2d at 284. The Greens

cannot claim that the "each person/each accident" distinction was an unexpected result, or emasculated apparent coverage, since the distinction was made on the declarations page. *Cf. Gordinier*, 154 Ariz. at 273, 742 P.2d at 284. A reasonable person examining the declarations page would refer to the endorsement to determine how and when the "each person" limitation in fact applies. The underinsured endorsement is clearly labeled (although its position in the policy is not clear from the record). *Cf. Gordinier; Bogart.* Moreover, the "each person/each accident" distinction is very common and it is understandable. It is specifically approved of by statute for liability insurance, A.R.S. § 28–1102(6), and is probably found in one form or another in most motor vehicle policies in Arizona. *See Campbell; Herring; cf. Bogart* (the provision at issue was not a standard type of clause). The insured need look only to the "Split Underinsured Motorist Coverage" endorsement to ascertain how the "each person/each accident" provision actually applies, as opposed to having to look through several parts of the policy. *Cf. Gordinier; Bogart.*

The bottom line is that the boilerplate does not take away or emasculate coverage provided on the face of the declarations page. The Greens claim in their affidavit that they expected to each have $100,000 of underinsured coverage. Under the terms of the policy, they do, but only if they are personally injured or killed in an accident. Any other expectation is unreasonable in light of the policy and dickered deal, as set forth on the declarations page.

### A.R.S. § 20–259.01(C) and PUBLIC POLICY

The Greens argue that A.R.S. § 20–259.01(C) requires that underinsured coverage be available for each of the Greens. The crux of their argument is that once underinsured coverage is purchased, the coverage must extend to all persons insured under the policy in the amount purchased. Citing *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 731 P.2d 84 (1986), and *Calvert v. Farmers Ins. Co.*,

144 Ariz. 291, 697 P.2d 684 (1985), they argue that A.R.S. § 20–259.01 has been broadly construed so that coverage limitations in insurance policies are not recognized unless expressly permitted by statute. Since A.R.S. § 20–259.01(C) makes no mention of an each person/each accident provision for underinsured coverage, they assert that the provision is void against public policy.

This argument is flawed. First, the "each person/each accident" provision for underinsured coverage was impliedly approved in *Campbell v. Farmers Ins. Co. of Arizona.*[3] To the extent that the scope of § 20–259.01 and public policy issues were neither raised nor addressed in *Campbell*, we consider them now.

Arizona Revised Statutes § 20–259.01 sets forth the statutory requirements with respect to uninsured and underinsured motorist coverage. Uninsured coverage, which was originally optional, became mandatory in 1966. A 1981 amendment to the statute required uninsured and underinsured coverage to be provided in all automobile policies. Laws 1981, Ch. 224, § 1. In 1982, underinsured coverage was made optional, but insurers were obligated to make it available to each insured in the same amount as the liability coverage purchased. Laws 1982, Ch. 298, § 1. Uninsured coverage remained mandatory. The statute, with respect to underinsured coverage, states in pertinent part:

C. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.... At the request of the insured the insured may purchase and the insurer shall then include within the

---

3. See discussion, *supra*.

policy underinsured motorist coverage which extends to and covers all persons insured under the policy in any amount authorized by the insured up to the liability limits for bodily injury or death contained within the policy.

A.R.S. § 20–259.01(C). The language of subsection C is identical to that of subsection B which concerns uninsured motorist coverage. Uninsured coverage, however, must be provided pursuant to subsection A, in the amounts specified in A.R.S. § 28–1102.[4] Subsection B requires the insurer to offer uninsured coverage up to the amount of liability coverage purchased by the insured.

In *Spain v. Valley Forge Ins. Co.*, 152 Ariz. at 193, 731 P.2d at 88, Spain was the personal representative of Patricia L. Story, decedent, who was a passenger in a Subaru car driven by Estelle Billings. Story died from injuries she received when the Subaru collided with a car driven and operated by an uninsured motorist. It was stipulated that both drivers were negligent. Billings' Valley Forge Insurance Company insurance policy provided for $100,000 liability coverage for bodily injury or death and $100,000 uninsured motorist protection. Under the policy's definition, Story as a passenger was covered by the uninsured motorist provision of the policy.

The policy contained standard insurance form language providing that the company was obligated to pay only a single limit of $100,000 per incident. The policy provided that sums paid under the liability coverage reduced the limit of liability under the uninsured motorist coverage.

Valley Forge paid the $100,000 liability limit based on Billings' negligence but refused to pay an additional $100,000 pursuant to the uninsured motorist endorsement based upon the uninsured's negligence. Valley Forge refused on the ground that the policy offset provision prevented recovery of more than $100,000 on the combined coverage. The court stated:

A.R.S. § 20–259.01(B) provides that an insured may purchase UM [uninsured motorist] coverage up to the limits of his or her liability coverage. The clear meaning of this provision is that an insured who exercises the statutory right to purchase UM coverage equal to the limit of liability coverage has available the total of the two in the event of an accident such as occurred here. *Any attempt to reduce this coverage from the amount the legislature has given the insured the right to buy violates the uninsured motorist statute and is therefore void as against public policy. The uninsured motorist statute could, but does not, authorize or contemplate the offset claimed by Valley Forge.*

152 Ariz. at 193, 731 P.2d at 88 (emphasis added). Since subsections (B) and (C) contain identical language, the Greens argue that *Spain* applies equally to underinsured coverage. Therefore, once an insured elects to purchase *underinsured* coverage, the amount of coverage cannot be decreased by offset provisions in the policy.

■ We disagree with these conclusions. Although uninsured and underinsured coverages are intended to cover similar types of losses, "the two types of insurance are fundamentally different." *Preferred Risk Mutual Ins. Co. v. Tank*, 146 Ariz. 33, 36, 703 P.2d 580, 583 (App.1985). An insurer must provide uninsured coverage, whereas underinsured coverage is optional, but the insurer must offer it up to the limits of their liability coverage. A.R.S. § 20–259.01; *see State Farm Mutual Auto. Ins. Co. v. Jannsen*, 154 Ariz. 386, 742 P.2d 1372 (Ariz.App.1987), *petition for review denied* September 15, 1987. Although we consider this distinction critical, we do not believe that *Spain* is applicable in any event. We therefore do not reach the questions of whether *Spain* applies to underinsured coverage or, as the Greens urge, whether *Spain* impliedly overruled *Mason v. State Farm Mut. Auto. Ins. Co.*, 148 Ariz. 271, 714 P.2d 441 (App.1985),

---

4. A.R.S. § 28–1102(6) requires coverage of "fifteen thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to the limit for one person, in the amount of thirty thousand dollars because of bodily injury to or death of two or more persons in any one accident."

which held that "other vehicle" exclusions with respect to underinsured coverage are not void against public policy.

In each of the cases upon which the Greens rely, the effect of the offset was to eliminate or decrease the amount of coverage which was provided elsewhere in the policy. The "each person/each accident" provision is not an offset, however, such as the "other insurance" exclusion in *Spain*, or the "other vehicle" exclusion in *Calvert* and *Jannsen*. The Greens purchased $100,000 "each person" and $300,000 "each accident" coverage. The fact that the lesser "each person" amount is the most coverage available, because the surviving Greens were neither injured nor killed in an accident, is not an offset. Nothing in the policy indicates that the Greens are entitled to the larger "each accident" amount, or that an insured is entitled to underinsured coverage in the absence of bodily injury or death. *Cf. Spain; Calvert; Jannsen.*

The Greens also argue that, although the "each person/each accident" provision cannot limit underinsured (and uninsured) coverage, it can limit liability coverage. This, they explain, is why they were only entitled to the "each person" amount of the other driver's liability insurance. Moreover, they agree that "each person/each accident" provisions were valid for underinsured and uninsured coverage prior to the 1981 and 1982 amendments to A.R.S. § 20-259.01. Thus, *Herring*, which concerned uninsured coverage prior to the amendments, is consistent with their position. *But see Campbell* (concerning underinsured coverage *after* the amendments). Prior to 1981, A.R.S. § 20-259.01(A) expressly referred to A.R.S. § 28-1142 for the required amount of uninsured coverage, which was $15,000 per person and $30,000 per accident. The reference to § 28-1142 was removed from § 20-259.01(A) in 1981, at which time subsections (B) and (C) were added. The Greens argue that (B) and (C) set the coverage amount, once purchased by the insured, according to the *number of persons insured*. The language they rely on requires the insurer to "include within the policy underinsured motorist coverage *which extends to and covers all persons*

*insured under the policy....*" A.R.S. § 20-259.01(C) (emphasis added). Therefore, there is no longer a reference to A.R.S. § 28-1142, which essentially approved "each person/each accident" provisions for motor vehicle insurance policies. Instead, the Greens argue, *every insured* is entitled to the "each person" underinsured coverage, subject only to the "each accident" maximum of total coverage.

■ We do not agree with this convoluted reasoning. The obvious intent of the above-quoted phrase from A.R.S. § 20-259.01(C) is that each person insured under a policy is entitled to underinsured coverage, if purchased, if and when a person insured under the policy suffers bodily injury or death, but only to the extent of the policy limits applicable to the person who was injured and/or killed in an automobile accident. This is consistent with the reasoning in *Calvert v. Farmers Ins. Co.*, 144 Ariz. at 296, 697 P.2d at 689 that uninsured coverage follows the insured rather than the vehicle. A.R.S. § 20-259.01(E) provides that underinsured coverage is available when a person's coverage for *"bodily injury or death"* resulting from the accident exceeds the amount of liability coverage. (Emphasis added).

■ Therefore, in this case where the victim died as a result of the accident, the underinsured coverage is available to compensate the surviving Greens, but the recovery is limited to the "each person" provision of the statute since there was only the one death resulting from the accident. The fact that the surviving Greens were named insureds under the policy does not entitle them to underinsured coverage with respect to the death of Edward Green in excess of the $100,000 each person limit applicable to Edward Green for bodily injury or death. Since the Greens do not allege that they were personally injured or killed in an accident, the fact that they are persons insured under the policy has no bearing on the coverage available. *See Campbell; Herring.* Underinsured coverage is available because of Edward Green's death,

not because of any damages suffered by the surviving Greens.

Finally, an insurer must offer underinsured coverage "in limits not less than the liability limits for bodily injury or death contained within the policy." A.R.S. § 20–259.01(C). The Greens concede that policies may restrict liability coverage to each person/each accident amounts. The Greens' policy had liability coverage of $100,000 for each person and $300,000 for each accident. They purchased the same amount of underinsured coverage. According to the Greens' reasoning, their liability to the survivors of a person killed in an accident caused by one of them would be limited to the "each person" amount, or $100,000. Yet, under the underinsured coverage of the same policy, the survivors are entitled to the "each accident" amount, or $300,000. The insurer's liability is thus greater for underinsured coverage than for liability coverage.

This stretches the language of the statute too far. The only reasonable interpretation is that the Greens purchased the same amount of underinsured coverage as liability coverage, and that the each person limitation applies. The statute only permits an insured to purchase underinsured motorist coverage "up to the liability limits for bodily injury or death contained within the policy." A.R.S. § 20–259.01(C). Thus, an insured is precluded from purchasing a greater amount of underinsured coverage than liability coverage. The construction urged by the Greens would do just that and therefore violate the statute.

## CONCLUSION

*Campbell* and *Herring* are controlling with respect to the interpretation of the Mid–America policy. The each person/each accident provision of underinsured coverage does not exceed the range of reasonable expectation. Lastly, the policy does not violate A.R.S. § 20–259.01. Since the Greens did not suffer any bodily injuries, their total underinsured recovery is limited to the $100,000 "each person" amount.

The trial court is affirmed.

KLEINSCHMIDT and GRANT, JJ., concur.