**Richard E. SPAUR, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, a Foreign Corporation, Defendant–Appellee.**

No. 95CA1115.

Colorado Court of Appeals, Div. IV.

Dec. 12, 1996.

Rehearing Denied Jan. 16, 1997.

Certiorari Denied Sept. 15, 1997.

Barbara J. Furutani, Denver, for Plaintiff–Appellant.

Holland & Hart, Brian Muldoon, Denver, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

This is an appeal from a declaratory judgment entered by the trial court in favor of defendant, Allstate Insurance Company, which determined that plaintiff, Richard E. Spaur, was not entitled to payment for his loss of consortium claim under his uninsured motorist policy. The issue presented is whether the provision of the policy which aggregates derivative claims with the claims of the person primarily injured is ambiguous or in violation either of public policy or the rule of reasonable expectations. We hold that the provision is both unambiguous and valid. Thus, we affirm.

The facts are not disputed. Plaintiff's wife was severely injured in a motor vehicle accident. Plaintiff was not in the car or near the site of the accident. Plaintiff and his wife were insured under a policy issued by defendant which provided, as pertinent here, uninsured motorist coverage with $25,000 per person and $50,000 per accident limits. Defendant paid plaintiff's wife the per person policy limit of $25,000.

Plaintiff sought payment of $25,000 for loss of consortium as a result of his wife's injuries. Defendant denied payment on the ground that, under the policy, plaintiff's wife had been paid the per person policy limit of $25,000 and plaintiff's claim was subject to that limit. Plaintiff filed a complaint for declaratory judgment, contending that the policy language was ambiguous, contrary to public policy, and contrary to the rule of reasonable expectations. The trial court disagreed, and plaintiff filed this appeal.

The policy limits uninsured motorist coverage as follows:

Limits of Liability

The Uninsured Motorists Coverage for Bodily Injury limit stated on the declarations page is the maximum amount payable for this coverage by this policy for any one accident. This means the insuring of more than one auto for other coverages will not increase our limit of liability beyond the amount shown in the declarations.

Regardless of the number of insured autos under this coverage, the specific amount shown on the declarations is the maximum that we will pay under this coverage for:

1. 'each person' for damages *arising out of* bodily injury to any one person in any one motor vehicle accident, *including damages sustained by anyone else as a result of that injury.*

2. 'each accident' for damages arising out of *bodily injury to two or more persons* in any one motor vehicle accident. This 'each accident' limit is subject to the 'each person' limit. (emphasis supplied)

The policy defines "bodily injury" to mean "bodily injury, sickness, disease or death."

A.

Plaintiff first contends that the "each person" provision of the policy is ambiguous and, thus, must be read to provide separate and independent per person coverage for his loss of consortium claim. We disagree.

When the language of an insurance contract is clear and unambiguous on its face, it must be upheld as written. Courts may neither rewrite an unambiguous policy nor force a strained construction in order to resolve it against the insurer. *Chacon v. American Family Mutual Insurance Co.,* 788 P.2d 748 (Colo.1990).

By its plain language, the policy provides that payment up to the per person coverage limit, here $25,000, will be made to "each person" who has sustained damages arising out of his or her bodily injury. The "each person" limit is unambiguously set forth as the total limit for all damages arising out of bodily injury to one person in any one motor vehicle accident. Clearly included within the damages to the injured person are "damages sustained by anyone else" as a result of the bodily injury suffered by that person.

Plaintiff's assertion notwithstanding, this provision simply cannot be read to provide, as plaintiff suggests, that any person who also has suffered damage from injury to an insured person has a separate claim up to the "each person" limit so long as one insured person has suffered bodily injury. To the contrary, the provision plainly restricts coverage to those who have sustained bodily injury and includes within that coverage any derivative claims of other persons. *Compare Lampton v. United Services Automobile Ass'n,* 835 P.2d 532 (Colo.App.1992) (construing similar policy language); *Kinsella v. Farmers Insurance Exchange,* 826 P.2d 433 (Colo.App.1992) (construing similar policy language); and *Arguello v. State Farm Mutual Automobile Insurance Co.,* 42 Colo.App. 372, 599 P.2d 266 (1979) (construing similar policy language) *with Sparks v. American Fire & Indemnity Co.,* 769 P.2d 501 (Colo. App.1989) (coverage included separate derivative claims).

### B.

■ Plaintiff also contends that it is contrary to public policy to allow the aggregation of his loss of consortium claim with his wife's bodily injury claim and to subject them both to a single "each person" coverage limit. Specifically, plaintiff argues, because uninsured motorist coverage must permit an injured person to recover compensation to the same extent that recovery would be permitted against an insured motorist, *see Union Insurance Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994), public policy requires that he be paid here because he has a separate personal injury claim against the tortfeasor motorist for loss of consortium. We disagree.

■ As pertinent here, insurers offering automobile liability coverage must, by statute, also extend uninsured motorist coverage. *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92 (Colo.1995); § 10–4–609, C.R.S. (1994 Repl.Vol. 4A). The purpose of imposing this duty on the insurer is to protect the insured against the risk of inadequate compensation resulting from injuries and damages incurred in an automobile accident with an uninsured or underinsured motorist. *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo.1992).

■ It is a violation of public policy for terms or provisions of an insurance contract to attempt to dilute, condition, or limit statutorily mandated coverage. *See Terranova v. State Farm Mutual Auto. Insurance Co.*, 800 P.2d 58 (Colo.1990). Conversely, a policy provision which is in compliance with the specific requirements of the Colorado Auto Accident Reparations Act, *ipso facto*, conforms to the public policy codified within that Act. *See Shean v. Farmers Insurance Exchange*, 934 P.2d 835 (Colo.App. 1996).

As relevant here, §§ 10–4–706(1)(a) and 10–4–609(1), C.R.S. (1994 Repl.Vol. 4A) specifically provide that motor vehicle liability and uninsured motorist policies, respectively, must provide coverage for "bodily injury" or death.

However, "[n]othing [in these statutes] suggests that the General Assembly considered loss of consortium to be a separate bodily injury which must be insured against in all insurance policies." *Arguello v. State Farm Mutual Insurance Co., supra,* 42 Colo. App. at 375, 599 P.2d at 268. Although a person who has lost the society, companionship, and services of his or her spouse has sustained a personal injury, such loss is "not a bodily injury within the commonly accepted meaning of that term." *Lampton v. United Services Automobile Ass'n, supra,* 835 P.2d at 534. *See* 1 A. Widiss, *Uninsured & Underinsured Motorist Coverage* § 12.4 (1990) ("Courts have almost uniformly held that persons who sustain consequential damages have not sustained bodily injuries *in* an accident and, therefore, the Limit of Liability for one injured person applies regardless of how many uninsured motorist insurance claims there may be by persons who suffered consequential damages." (emphasis in original)).

Thus, to be in compliance with the requirements of the Colorado Auto Accident Reparations Act, an insurer need not offer either liability or uninsured motorist insurance which separately covers a loss of consortium claim. And, in that regard, insofar as plaintiff insists that he must be compensated as if the tortfeasor motorist here was not uninsured, we note simply that a tortfeasor who *is* insured in compliance with Colorado law need not have liability coverage for a separate loss of consortium claim.

■ Plaintiff points out, however, that whereas the other provisions of the Colorado Auto Accident Reparations Act require coverage for "bodily injury or death," § 10–4–609(1) describes persons to be protected by uninsured motorist coverage as those who have suffered not only "bodily injury or death," but also "sickness or disease." He argues that his loss of consortium is a "sickness" and that its inclusion in the uninsured motorist provision of the statute requires that his claim for damages for such loss be allowed a separate recovery limit.

■ To the contrary, however, consortium refers to affection, society, services, companionship, aid and comfort given by a spouse. *See CJI–Civ.3d* 6:6 (1991). By definition, then, the loss of such consortium is no more a "sickness" of the noninjured spouse than it is a "bodily injury." *See Gonzales v. Allstate*

*Insurance Co.*, 122 N.M. 137, 921 P.2d 944 (1996) ("bodily injury, sickness, disease or death" constitutes injury to the physical body rather than mental or emotional injuries); *GEICO v. Fetisoff*, 958 F.2d 1137 (D.C.Cir. 1992) (policy defining bodily injury as bodily injury, sickness, or disease, including death, "plainly excludes consortium-type losses"); *Albin v. State Farm Mutual Automobile Insurance Co.*, 498 So.2d 171 (La.Ct.App.1986) ("bodily injury" generally refers only to injury to the body, or to sickness or disease contracted as a result of injury and, thus, does not include loss of consortium injuries). *See also Creamer v. State Farm Mutual Automobile Insurance Co.*, 161 Ill.App.3d 223, 112 Ill.Dec. 748, 514 N.E.2d 214 (1987) ("bodily injury" includes sickness, disease, or death).

Hence, plaintiff's assertion notwithstanding, any emotional consequence of loss of consortium, "sickness" or otherwise, does not convert such claim into a cause of action for bodily injury to the spouse suffering the loss; it is merely an element of consequential damages arising out of the bodily injury to the spouse injured in the accident. *See State Farm Mutual Automobile Insurance Co. v. Ball*, 127 Cal.App.3d 568, 179 Cal.Rptr. 644 (1981); *see also Kinsella v. Farmers Insurance Exchange, supra* (derivative claims are a consequence of injury suffered by another).

Moreover, as discussed, we find nothing in the statute to indicate any intent by the General Assembly to require that uninsured motorist protection provide more expansive coverage than that required under a motor vehicle liability policy, and we will not read it to do so. *See Alliance Mutual Casualty Co. v. Duerson*, 184 Colo. 117, 518 P.2d 1177 (1974) (legislative intent is satisfied by recovery which assures that an injured motorist will be compensated at least to the same extent as one injured by a motorist who is insured in compliance with Motor Vehicle Financial Responsibility Act).

Finally, § 10–4–609 "does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances." *Terranova v. State Farm Automobile Insurance Company, supra*, 800 P.2d at 61. Nothing in the legislatively expressed purpose of avoiding inadequate compensation to automobile accident victims requires that plaintiff's loss of consortium claim against the uninsured motorist be transmuted into a right to recover compensation from defendant without regard to policy limits. To the contrary, plaintiff is entitled to the benefits of coverage only "to the extent necessary to fully compensate the insured for the loss, *subject to the limits of the insurance contract.*" *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759, 766 (Colo.1989) (emphasis added); *see Shean v. Farmers Insurance Exchange, supra.*

Here, the reason plaintiff has been denied payment is not because his loss of consortium claim is not covered; it *is* covered, but as a derivative claim. The fact is that he cannot recover from defendant because the amount of uninsured motorist coverage he purchased was not sufficient to compensate him fully. When plaintiff did not purchase more extensive "per person" uninsured motorist coverage, he—not defendant—elected to assume the risk for damages over that amount. *See Lampton v. United Services Automobile Association, supra* (a court will not impose on an insurance company responsibility for risks which it has not assumed).

### C.

Because the policy is neither ambiguous nor contrary to public policy, the rule of reasonable expectations is inapplicable. The doctrine of reasonable expectations supplements, but does not substitute for, the rule that insurance policies are to be considered according to well-settled principles of contract construction. *See Davis v. M.L.G. Corp.*, 712 P.2d 985 (Colo.1986) (doctrine of reasonable expectations may be appropriate in unique circumstances of extreme unconscionability); *Shean v. Farmers Insurance Company, supra.*

Furthermore, to the extent that plaintiff argues that defendant had an obligation to point out the coverage limits for derivative claims at the time the policy was purchased, we also disagree. As discussed, these terms are unambiguous, and it is the policyholder's responsibility to read the poli-

cy. *See Concialdi v. Pueblo Gas & Fuel Co.,* 137 Colo. 563, 328 P.2d 98 (1958) (insured has duty to read insurance documents); *Smith v. Connecticut Mutual Life Insurance Co.,* 45 F.3d 427 (4th Cir.1995) (corollary to insured's duty to read is that insurer has no duty to warn insured about the provisions); *National Farmers Union Property & Casualty Co. v. Zuber,* 824 F.Supp. 1017 (D.Wyo.1993) (acknowledging insured's duty to read policy); *St. Paul Fire & Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255 (Wyo.1988) (in light of insured's duty to read policy, doctrine of reasonable expectations inapplicable where policy terms are clear and unambiguous).

■   Plaintiff's assertions notwithstanding, *Sanchez v. Connecticut General Life Insurance Co.,* 681 P.2d 974 (Colo.App.1984) does not hold to the contrary. The question in *Sanchez* was not, as it is here, the meaning of a policy term or the scope of coverage, but whether a policy was in existence in the first place. In that case, the insurer failed to deliver to the applicant a conditional receipt which contained a provision that applicant's temporary insurance would terminate if he was rejected as a standard risk. In that situation, a division of this court held that an insurer which intends to limit temporary coverage must call such limiting conditions to the attention of the applicant. Nothing in that decision, however, can be read to impose upon an insurer a general obligation to explain unambiguous policy provisions to a prospective insured. *See also Leland v. Travelers Indemnity Co.,* 712 P.2d 1060 (Colo.App. 1985) (dispute over whether premiums had been timely paid).

The judgment is affirmed.

STERNBERG, C.J., and NEY, J., concur.