**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 15 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

OLD REPUBLIC INSURANCE
COMPANY, a Pennsylvania corporation,

    Plaintiff - Appellant,

v.

DURANGO AIR SERVICE, INC., a
Colorado corporation; DONLEY E.
WATKINS; ELLEN ROBERTS, as
Personal Representative of the Estate of
Morten Borcher; JAMIE L. ROSS,
individually and as surviving spouse of
COLT H. ROSS, deceased, and as natural
parent of JAYLIE B. ROSS and JAIDA
S. ROSS, minor children of Colt H. Ross;
CRYSTAL L. ROSS, individually and as
surviving spouse of JON DIRK ROSS,
deceased, and as natural parent of JON
TALON ROSS, TESSA M. ROSS,
STARR L. ROSS, and CASH D. ROSS,
minor children of Jon Dirk Ross;
AMBER ANNE ROSS; and BRANDI L.
ROSS,

    Defendants - Appellees.

No. 01-1051

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 98-D-2371)**

---

John W. Grund (Della S. Nelson, with him on the briefs), Grund & Breslau, P.C.,
Denver, Colorado, for Plaintiff-Appellant.

Zane R. Moseley of Zarlengo, Mott, Zarlengo & Winbourn, P.C., Denver, Colorado, for Defendant-Appellee Durango Air Service, Inc.; John D. McClune of Schaden, Katzman, Lampert & McClune, Broomfield, Colorado, for the Ross Defendants-Appellees, (Reed L. Winbourn of Zarlengo, Mott, Zarlengo & Winbourn, P.C., Denver, Colorado; Bruce A. Lampert of Schaden, Katzman, Lampert & McClune, Broomfield, Colorado; and G. Raymond Goodwin of Watrous Ehlers Mielke & Goodwin, P.C., Littleton, Colorado, with them on the briefs), for Defendants-Appellees.

---

Before **TACHA**, Chief Judge, **GARTH**,[*] and **BRISCOE**, Circuit Judges.

---

**GARTH**, Circuit Judge.

---

This appeal involves the interpretation of two insurance policies after a fatal airplane crash. Although we initially determined that we did not have proper appellate jurisdiction over the matters presented, that infirmity has since been cured by an agreement of the parties to dismiss with prejudice any claims outstanding in the district court. On the merits, we now affirm the district court's decision granting summary judgment in favor of the Defendants-Appellees.

## I.

This case arose from an airplane crash on October 10, 1995, in which the pilot, Morten Borcher ("Borcher"), and both passengers, Colt H. Ross and Jon Dirk Ross

---

[*] Honorable Leonard I. Garth, United States Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

(collectively "Decedents"), were killed. Durango Air Service ("Durango") owned the aircraft and employed the pilot. As a result of the accident, the wives and children of the Decedents brought a wrongful death suit in state court against Durango, Donley E. Watkins ("Watkins"), the president of, and a substantial shareholder in, Durango, and Ellen Roberts ("Roberts"), as the personal representative of Borcher's estate. (App. 24.) Durango, Watkins, and Borcher (hereinafter "the Insureds") were insured by Plaintiff-Appellant Old Republic Insurance Co. ("Old Republic") under two policies, commonly referred to as the Aviation Policy and the "CGL" Policy, the Airport Liability Policy.

In a Colorado state court proceeding, the Insureds confessed judgment in favor of the Decedents' families in the amount of $4.05 million. (App. 133, 194-95.) Old Republic had rejected a settlement of $800,000. The Colorado state court entered judgment upon the Insureds' Confession of Judgment on January 26, 1999. In response to the state court's judgment, Old Republic paid the Insureds $200,000 pursuant to the Aviation Policy's $100,000 per passenger liability limit. It paid them nothing under the CGL Policy.

Old Republic then filed a declaratory judgment action in the United States District Court for the District of Colorado on October 29, 1998, claiming that the $200,000 it had already paid the Insureds was the limit of its liability under the Aviation Policy, and that Old Republic had no obligations to the Insureds under the CGL Policy. (App. 21-23.) It sought a declaratory judgment that it had discharged the full extent of its obligation to

indemnify the Insureds.

The Insureds filed counterclaims alleging causes of action against Old Republic for breach of contract, willful and wanton breach of contract, negligence, breach of covenant of good faith and fair dealing, and breach of fiduciary duty. (App. 128-33.) Among other things (e.g. triple damages, pre- and post-judgment interest, etc.), the counterclaims sought indemnification from Old Republic for the $4.05 million judgment (minus the $200,000 Old Republic already had paid) resulting from the state court wrongful death action. Both the Insureds and Old Republic filed cross-motions for summary judgment on May 14, 1999. (App. 154-63.)

The district court denied Old Republic's cross-motion for summary judgment on November 30, 2000. It held in favor of the Insureds, concluding that the full extent of Old Republic's duty of indemnification under its two policies was $1.7 million (*Aviation Policy*: $700,000; *CGL Policy*: $1 million). It then dismissed the case with prejudice,[1] but without deciding the Insureds' counterclaims.[2] The judgment reflecting the district

---

[1] We question the district court's order, which dismissed the case with prejudice, in light of the fact that a dismissal of a case is inappropriate once a judgment has been entered. See, e.g., Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999). Of more importance, however, is the fact that the case could not be dismissed with the non-separable counterclaims undecided, even pursuant to an order of bifurcation. The district court acknowledged that the counterclaims were still pending when it entered its order of January 19, 2001.

[2] The magistrate judge's scheduling order had bifurcated the Insureds' counterclaims from Old Republic's declaratory judgment action.

-4-

court's decision of November 30, 2000 was entered on December 6, 2000.[3] All

provisions of the November 30, 2000 order were incorporated into the December 6, 2000

order.

On December 18, 2000, Old Republic filed a Motion for Entry of Judgment

Pursuant to Fed. R. Civ. P. 54(b).[4] The Insureds filed a Motion for Clarification and

---

[3] Because of the dual manner in which the district court entered its orders disposing of Old Republic's declaratory judgment claim and granting summary judgment to the Insureds, we will treat both the November 30, 2000 order and the December 6, 2000 order as the relevant order through which the district court disposed of Old Republic's claim, identifying it throughout this opinion as the December 6 order.

The December 6 order stated that "[p]ursuant to and in accordance with the Order filed on November 30, 2000 . . . and incorporated herein by reference . . . it is ORDERED that declaratory judgment is entered in favor of [the Insureds] and against [Old Republic] and [Old Republic's] duty of indemnification under the Aviation Policy is $700,000 and [Old Republic's] duty of indemnification under Commercial General Liability Policy [CGL] is $1,000,000." (App. 175.)

The district court explained that the December 6 order incorporates by reference the order of November 30, 2000, in which the district court:

> ORDERED that [Old Republic's] Motion for Summary Judgment [on Old Republic's declaratory judgment claims] filed May 14, 1999 is DENIED. It is
> FURTHER ORDERED that [the Insureds'] Motion for Summary Judgment [on Old Republic's declaratory judgment claims] filed May 14, 1999 is GRANTED. This case is DISMISSED WITH PREJUDICE . . . . It is
> FURTHER ORDERED that the clerk of court enter declaratory judgment that [Old Republic's] duty of indemnification under the Aviation Policy is $700,000 and [Old Republic's] duty of indemnification under the CGL policy is $1,000,000.

(App. 172.)

[4] Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express

Reinstatement of their counterclaims on December 21, 2000. Both motions were granted by the district court on January 19, 2001, when the district court certified the December 6, 2000 order as final with no just reason for delay. (App. 178-81.) This appeal followed.

**II.**

Our initial concern after oral argument was that the December 6th order entered by the district court did not constitute a valid Rule 54(b) certification because the Insureds' counterclaims and Old Republic's claim were not separate but were rather inextricably related.

Rule 54(b)'s finality requirement is only satisfied if "the claims resolved are distinct and separable from the claims left unresolved." Oklahoma Turnpike Auth. v. Bruner, 259 F.3d 1236, 1241 (10th Cir. 2001); see also McKibben v. Chubb, 840 F.2d 1525, 1528-29 (10th Cir. 1988) (holding that order was final for purposes of Rule 54(b) certification because claims were separable); 19 James Wm. Moore et al., Moore's Federal Practice ¶ 202.06[2] (3d ed. 1999).

In its declaratory judgment action, Old Republic sought an interpretation of its policies which would limit its exposure and its indemnification duties to $200,000. The Insureds, on the other hand, through their counterclaims, sought an interpretation of the very same policies and clauses that would provide increased coverage, but that would

direction for the entry of judgment.

-6-

also indemnify them for their "wrongful death" state judgment. The parties' respective claims were based on identical facts and on the same policies - indeed, on the same clauses of the same policies. Rather than being independent and separable, the record disclosed that the claims of both the Insureds and Old Republic all stemmed from the same occurrence and were inextricably intertwined and related. On appeal, we therefore were prepared to hold that the district court's certification of its December 6th order under Rule 54(b) was improper, as it was not a final order.[5]

Accordingly, having determined that the 54(b) certification had been rendered in error, we were compelled to conclude that we had no appellate jurisdiction and therefore could not address the merits of Old Republic's claim. On January 16, 2002, however, and while our initial opinion was circulating and therefore was not yet filed, the Insureds dismissed their counterclaims, thereby making final that which was non-final. As a result, we now exercise appellate jurisdiction over the district court's order pursuant to 28 U.S.C. § 1291, and review the merits of Old Republic's claim.

**III.**

---

[5] In our discussion holding the Rule 54(b) certification inappropriate, we suggested that as a matter of better practice (indeed, the most desirable practice) district courts, in their future considerations of Rule 54(b) certification requests, clearly articulate their reasons and make careful statements based on the record supporting their determinations of "finality" and "no just reason for delay" so that we could review a 54(b) order more intelligently, and thus avoid jurisdictional remands.

We review the district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court. Wark v. United States, 269 F.3d 1185, 1187 (10th Cir. 2001). We also review the district court's interpretation of the insurance policies *de novo*. Mauldin v. Worldcom, Inc., 263 F.3d 1205, 1211 (10th Cir. 2001). We apply Colorado contract law in this case.[6] Under Colorado law, in the absence of an ambiguity, an insurance contract must be given effect according to the ordinary and accepted sense of the terms contained therein. In the Matter of the Estate of Daigle, 634 P.2d 71, 79 (Colo. 1981) (en banc).

## A. The Aviation Policy

The Insureds purchased an Aviation Policy from Old Republic. Although both parties agree that the Insureds are entitled to coverage under the Policy regarding the crash on October 10, 1995, they disagree as to the precise amount. The Insureds contend that the Aviation Policy entitles them to $700,000 in coverage. Old Republic asserts that the Policy limits the Insureds' recovery to $200,000. The district court ruled in favor of the Insureds.

The Aviation Policy's general liability provision represents an agreement by Old

---

[6] Colorado law governs because Colorado has the most significant relationship to the insuring transaction and to the parties. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); ITT Specialty Risk Servs. v. Avis Rent A Car Sys., Inc., 985 P.2d 43, 47 (Colo. App. 1998) (citing Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 601 P.2d 1369 (Colo. 1979)). Furthermore, neither party contests the application of Colorado law in this case.

Republic:

> To pay on behalf of the Insured all sums which the Insured shall become *legally obligated* to pay as damages because of bodily injury sustained by *any person* (excluding any passenger unless the words "Including Passengers" appear in Item 4 of the Declarations) and property damage, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.

(App. 77 (emphasis added).)

Item 4 of the Declarations contains the phrase "including passengers." (App. 32.) Pursuant to the Policy's Definitions, bodily injury is defined as "bodily injury, sickness, disease or *mental anguish* sustained by *any person* which occurs during the policy period, including death at any time resulting therefrom." (App. 81 (emphasis added).)

Old Republic's exposure is limited under the Aviation Policy, however, by a liability limitation provision which reads, in pertinent part:

> The total liability of the Company for all damages . . . shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence."

> And further provided that if the Declarations are completed to show "passenger Liability [sic] limited to," the total liability of the Company for all damages, including damages for care and loss of service because of *bodily injury to passengers* shall not exceed:
> (a) as respect any one passenger, the amount stated in the declarations as applicable to "each person."
> (b) as respect two or more passengers, subject to the above provisions respecting any one passenger, the amount stated in the Declarations as applicable to "each person" multiplied by the number of passengers on board the aircraft . . . but in no event shall the Company's Liability for all bodily injury . . . exceed the limits stated in the Declarations as applicable to "each occurrence."

(App. 80.) The Declarations limit the amount applicable to "each occurrence" to $1

million, and to "each person" to $100,000. (App. 32.)

Old Republic argues, and the Insureds do not contest, that the Aviation Policy limits recovery for bodily injury *for each passenger* to $100,000. Old Republic then goes on, however, to argue that this limit pertains to *all* claims made in connection with the October 10, 1995 crash. More specifically, Old Republic maintains that the Decedents' families' claims for mental anguish are included within the liability limit for each passenger because these claims derive from the actions for bodily injury to each passenger, i.e. they could not have been made but for the injury to the particular passenger.

We are not persuaded by Old Republic's "derivative argument." In this case, the Policy clearly provides coverage for non-passengers' claims of emotional distress as well as passengers'. As we have recited, the Policy's definition of bodily injury specifically includes "mental anguish sustained by any person," (App. 81), and its general liability provision expressly states that coverage is available to "any person"[7] who suffers from mental anguish that is "caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." (App. 77.) The Decedents' families' mental anguish claims clearly arose from the "use" of the crashed aircraft, and are therefore covered by the Policy's general liability provision.

---

[7] The term "any person" of course is limited by the Policy to those individuals whom the Insureds "shall become legally obligated to pay." In this case, those persons would be the Decedents' families.

Old Republic argues, however, that under its Policy "the total liability of the Company *for all damages*, including damages for care and loss of service because of bodily injury to passengers shall not exceed . . . (b) as respect two or more passengers . . . the amount stated in the Declarations as applicable to "each person" multiplied by the number of passengers on board the aircraft . . . ." (App. 80.)  According to Old Republic, the phrase "for all damages" limits the Insureds' coverage to $100,000 per passenger, regardless of any injury that non-passengers may have experienced as a result of the crash.

We can not agree.  The Policy provision relied upon by Old Republic explicitly refers to *passenger* liability.  (App. 80.)  That provision makes no mention of limiting liability for *non-passenger* bodily injury.  (App. 32.)  This makes it clear that the Policy limitation was intended to apply to bodily injury sustained by *passengers*, but not to injuries sustained by *non-passengers*.

In short, if Old Republic had meant to limit its coverage for mental anguish and other noneconomic injuries to non-passengers by including such claims within the scope of coverage for injury to passengers, it could have done so explicitly.  The language of the Policy clearly explains that non-passengers' claims for mental anguish are covered and are independent of the $100,000 limitation for passenger injury.[8]

---

[8] Colt H. Ross, who was a passenger and was killed in the crash, had three family members who brought claims in Colorado state court against the Insureds as non-passengers.  Jon Dirk Ross, who was also a passenger and was killed in the crash, had

-11-

Finally, the cases relied on by Old Republic are distinguishable from the one at hand. In In the Matter of the Estate of Daigle, 634 P.2d 71 (Colo. 1981) (en banc), the policy in that case did not include mental anguish within the definition of bodily injury, as it does in the Old Republic Policy. Hence, the non-passenger claimants in Daigle were limited to a $100,000 per passenger recovery because they were not covered for mental anguish by the Daigle policies. Moreover, since the decision in Daigle, the Colorado Wrongful Death Act, Colo. Rev. Stat. Ann. § 13-21-202 et seq., has now been amended to include noneconomic damages similar to those found in the Old Republic Policy. Because it involved different policy language and was decided under different Colorado law, the Daigle case is inapposite.

Spaur v. Allstate Insurance Co., 942 P.2d 1261 (Colo. 1997), is similarly inapposite. Admittedly, Spaur was decided after the amendment to the Wrongful Death Act and did find that the liability provision at issue "plainly restricts coverage to those who have sustained bodily injury and includes within that coverage any derivative claims of other persons." Id. at 1263. What distinguishes Spaur from this case, however, are the differences in the two policies. Unlike the Aviation Policy in this case, the policy in Spaur defined bodily injury only as "bodily injury, sickness, disease or death," and did not include mental anguish as an element of damages. Id. at 1263. By contrast, the Aviation

seven family members who brought claims in Colorado state court against the Insureds as non-passengers.

Policy here explicitly includes all non-passengers in its coverage provision and defines mental anguish as a compensable bodily injury.

Because the Aviation Policy clearly provides coverage for all persons suffering from mental anguish as a result of aircraft operation, the Decedents' families' mental anguish claims are not limited by the $100,000 "each person" limitation. They are limited, however, by Colo. Rev. Stat. § 13-21-203, which prohibits recovery for noneconomic loss or injury in wrongful death cases "in excess of two hundred fifty thousand dollars." This limit is applied collectively for each decedent, see Mitson v. AG Eng'g & Dev. Co., 835 F. Supp. 572 (D. Colo. 1993), and is not contested by the Insureds. As a result, the Insureds are entitled under the Aviation Policy to a total recovery of $700,000; $500,000 for mental anguish to each of the Decedents' families ($250,000 x 2), and $200,000 for the injuries to the Decedents themselves ($100,000 x 2).

B. The CGL Policy (the Airport Liability Policy)

Old Republic entered into another policy with the Insureds, the CGL Policy. Under that Policy, Old Republic agreed that it "will pay on behalf of the **insured** all sums which the **insured** shall become *legally obligated* to pay as damages because of . . . **bodily injury** . . . . The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability." (App. 94-96 (italics added).) The amount of coverage available for "each occurrence" is limited to $1 million. (App. 100.)

-13-

Thus, Watkins, who by reason of the state court wrongful death judgment is legally responsible to the Decedents' families under the Colorado Wrongful Death Act, would be entitled to up to $1 million in coverage under the CGL Policy if he is not excluded from coverage by the Policy.

The exclusionary provision of the Policy eliminates coverage for:

> (B) . . . **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of
> (1) any . . . **aircraft** owned or operated by . . . the **named insured**, or
> (2) any . . . **aircraft** operated by any person in the course of his employment by the **named insured**.

(App. 94.) The parties agree this exclusion precludes coverage with respect to Durango and Borcher, as the owner and operator of the airplane, respectively. They disagree, however, with respect to Watkins' coverage.

However, the CGL Policy contains Special Airport Provisions, one of which states that the exclusion cited above also "applies only to aircraft . . . **in flight** *by or for the account of* the **insured**." (App. 87 (italics added).) The parties' dispute as respects the CGL Policy therefore focuses on whether the flight that crashed on October 10, 1995 was a flight "by or for the account" of Watkins, a corporate officer of Durango and one of two Durango shareholders.[9] If it was for the "account" of Watkins, the policy would not cover Watkins' liability. If it was not for his "account," as we hold here, Watkins is

---

[9] The parties do not dispute that the aircraft was in flight "by" Borcher and "for the account of" Durango.

covered for up to $1 million.

Both parties note the silence of Colorado law interpreting the Special Airport Provision and therefore rely, inter alia, on Boeing Airplane Co. v. Fireman's Fund Indem. Co., 268 P.2d 654 (Wash. 1954). See also State Farm Fire & Cas. Co. v. Keenan, 216 Cal. Rptr. 318, 328 (Cal. Ct. App. 1985) (applying Boeing).

Boeing had contracted with the government to modify a B-50 aircraft. In connection with that contract, Boeing had taken out insurance policies. After the aircraft crashed during a test flight, Boeing became responsible to pay some $58,000 in damages to other parties. Boeing sought to recoup those monies from the Fireman's Fund Insurance Co. For Boeing to be covered under its policy with the Fireman's Fund, any accident would have to occur *after* Boeing had relinquished possession of the aircraft; if Boeing had maintained possession, it was not covered. The policy also provided that it would not apply to the use of any aircraft and its coverage was not available where the aircraft was "in flight by or for the account of the insured [Boeing]." The Washington Supreme Court summarized these conditions by stating:

> Under the specific provisions of the . . . policies, there can be no coverage and the judgment [in favor of the insurance company] must be affirmed if (1) the accident occurred before Boeing had relinquished possession of the plane to others, or (2) if the plane was "in flight by or for the account of" Boeing.

Id. at 658.

The Washington Supreme Court affirmed the trial court's finding that Boeing had not relinquished possession of the plane at the time of the crash, and therefore there was

-15-

no coverage for Boeing. Additionally, the court also held that the insurance policy did not apply to Boeing, thereby denying coverage, because the test flight was "by or for the account of" Boeing, inasmuch as the completion of the test flight would have resulted in a *direct* benefit to Boeing. On the present appeal, we are concerned only with the court's discussion of "for the account of," and not with the particulars of Boeing's liability or maintenance of possession of the plane.

Boeing, however, is not the answer to this appeal, although its analysis is of substantial assistance in resolving the present case. First, of course, Boeing is a Washington state case and therefore is not binding in the instant Colorado context. Second, Boeing, while interpreting a different insurance contract than the one at issue here, nevertheless holds that where a *direct* benefit is received by the insured (in that case Boeing), such a *direct* benefit satisfies the condition that the flight was "by or for the account of" the insured. Boeing, of course, while finding that a direct benefit was present in that case, does not address the more relevant question presented in this case of whether an insured (a stockholder and corporate officer) who does not receive a direct benefit profits sufficiently, if at all, from the use of a plane by its corporate owner so as to come within the insurance policy's condition of "by or for the account of" the insured, Watkins. This question of indirect or intangible benefit has not been resolved in the case law of

Colorado or, to our knowledge, of any other jurisdiction.[10]

Due to the lack of guiding precedent, we are left with only the language in Boeing that a "direct financial benefit" to the insured is evidence of an activity being "for the account of the insured."  See Boeing, 268 P.2d at 661.  In the absence of Colorado law interpreting "for the account of," we would be hard-pressed to expand and extend the "direct benefit" holding of Boeing so as to construe the "account" clause to apply to an indirect, intangible, or incidental benefit (if one existed) that an insured who is a shareholder and officer such as Watkins may have received.  Corporations' shareholders and officers are not normally, if ever, on the front line of the benefits received by a corporation so as to individually profit from that corporation's activities.

Certainly, a stockholder and corporate officer of an airline cannot be said to receive a direct financial benefit from that airline's flights.  To decide otherwise would be to blur, if not totally eliminate, the distinction between the plane's actual owner, in this case Durango, and Durango's shareholders.  Although Watkins, as a shareholder, may possibly receive a minimal indirect or intangible benefit from each of Durango's flights, this benefit is simply not substantial enough to imply, let alone hold, that the crashed

---

[10] The few cases that interpret "for the account of the insured" did not do so with regard to a stockholder or corporate officer.  See, e.g., Keenan, 216 Cal. Rptr. at 328 (finding that plane was being flown "for the account of insured" when the insured was a plane rental company and the plane that crashed was one of the insured's planes being flown by a renter); Bellefonte Underwriters Ins. Co. v. Alfa Aviation, Inc., 312 S.E.2d 426, 428 (N.C. 1984) (finding that renter of airplane was not covered under the policy exclusion).

flight was "by or for the account of" Watkins.

Although Old Republic takes the position that the clause "for the account of" is unambiguous, (Appellant's Br. at 17), we are not that confident that Old Republic's characterization is a reasonable one in the present context. A policy provision is ambiguous if it is susceptible to more than one reasonable interpretation. See Terranova v. State Farm Mut. Auto. Ins. Co., 800 P.2d 58, 60 (Colo. 1990). The CGL Policy provision excluding the *owner* and *operator* of the aircraft from coverage is certainly unambiguous. However, in the absence of a comparable express exclusion in the CGL Policy that denies coverage to a shareholder or officer of the company owning the aircraft, we are not prepared to say that the instant CGL Policy excludes such individuals from coverage.

At the very most, Watkins, as an officer and shareholder, is an indirect beneficiary of Durango's operations. Because it is established in Colorado jurisprudence, where an ambiguity is found, that an insurance policy is construed against the drafter, see Bengtson v. USAA Property & Cas. Ins., 3 P.3d 1233, 1235 (Colo. App. 2000), in this case Old Republic, we can not hold on this record that the crashed aircraft was in flight "for the account of" Watkins rather than "for the account of" Durango. But even if we were to accede to Old Republic's position that the exclusionary clause in this context is unambiguous, our reading of the policy provision in light of reason and the Boeing analysis would result in no different conclusion: i.e., that Watkins is covered to the extent

of $1 million under the CGL Policy.

## IV.

The District Court correctly applied the relevant provisions of the Aviation Policy and the CGL Policy to the facts of this case. The Insureds are therefore entitled to $700,000 under the Aviation Policy and to $1 million under the CGL Policy. The district court's decision will therefore be affirmed.

No. 01-1051, <u>Old Republic Ins. v. Durango Air Service, Inc.</u>

**BRISCOE**, Circuit Judge, concurring and dissenting:

I concur in the majority's holding that the CGL Policy provides $1,000,000 in coverage in this case and would affirm the district court on that issue. I respectfully dissent, however, from the majority's holding that the Aviation Policy provides the Insureds with $700,000 in coverage rather than $200,000.

The Aviation Policy contains a limitation on liability, which expressly limits all damages which arise "because of bodily injury to passengers":

> Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury to property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) aircraft to which this policy applies, *the Company's liability is limited as follows:*
> . . .
> *. . . the total liability of the Company for all damages, including damages for care and loss of service because of bodily injury to passengers shall not exceed:*
>> (a) as respect any one passenger, the amount stated in Declarations as applicable to "each person."
>> (b) as respect two or more passengers, subject to the above provisions respecting any one passenger, the amount stated in the Declarations as applicable to "each person" multiplied by the number of passengers on board the aircraft.

Aplt. App. at 80 (emphasis added). The Insureds argue that the Aviation Policy not only provides coverage of $100,000 for each of the two passengers who died in the crash, but also provides coverage for the mental anguish sustained by the ten non-passengers who sued the Insureds. In its pleadings before the district court, the Insureds sought $1,000,000 in coverage under the Aviation Policy, which is the maximum amount of

coverage the policy provides for "each occurrence."

The district court agreed in part with the Insureds' contentions and concluded the Aviation Policy provided $700,000 in coverage. The district court agreed that the Aviation Policy covered the mental anguish of non-passengers and that the limitation of liability statement in the policy did not apply to damages sustained by non-passengers. However, the court determined that the statutory cap set forth in C.R.S. § 13-21-203 applied and limited the amount payable under the policy for the mental anguish of the non-passengers to $250,000 per passenger death, for a total of $500,000. The court therefore concluded that the Aviation Policy provided $700,000 in total coverage – $200,000 for bodily injury sustained by two passengers, and $500,000 for mental anguish sustained by the non-passengers.

While it cannot be denied that the non-passengers suffered mental anguish, the question presented is whether the non-passengers can recover damages under the Aviation Policy for their mental anguish.[1] Mental anguish is listed as a bodily injury under the policy. However, the non-passengers were not directly injured as a result of the accident, i.e., they were not at the scene of the accident. Instead, their mental anguish occurred "because of bodily injury to passengers." The Aviation Policy plainly limits

---

[1] While noting Old Republic's arguments to the contrary, the assertion that a wrongful death claim is derivative in nature is unhelpful. Whether the Aviation Policy provides coverage for the mental anguish of non-passengers is governed by the language of the policy, not by the character of the action.

liability for damages which arise "because of bodily injury to passengers" to $100,000 per passenger involved. Unless there is ambiguity in the language of an insurance policy, the policy should be enforced as written. See State Farm Mut. Auto. Ins. v. Stein, 940 P.2d 384, 387 (Colo. 1997). Therefore, regardless of the fact that the policy in question covers injury to non-passengers in some circumstances, the particular injury to the non-passengers at issue falls within the policy limitation for damages which arise "because of bodily injury to passengers." The coverage for the mental anguish arising out of the wrongful death of the two passengers is limited to $200,000.

The majority interprets the policy limitation as applying only to bodily injury sustained by passengers, and not to injuries sustained by non-passengers. However, the policy limitation at issue expressly references "damages for care and loss of service" as damages falling within the limitation. This reference within the policy limitation indicates the limitation applies to injuries, such as mental anguish, sustained by non-passengers. For example, damage for loss of service is not the type of damage which could be sustained by the passenger who is directly involved in an accident and is injured or killed. Damage for loss of service could only be sustained by a non-passenger "because of bodily injury to passengers." The damages for mental anguish alleged here, like damages for care and loss of service, are damages sustained by non-passengers but the damages arise "because of bodily injury to passengers."

I would reverse the district court's ruling with regard to the coverage provided by

the Aviation Policy and remand for entry of judgment in the amount of $200,000 on that policy.  In all other regards, I would affirm.