**Dr. Mina YUMUKOGLU, Plaintiff–Counter–Defendant–Appellant,**

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, Defendant–Counter–Claimant–Appellee.**

No. 01–2200.

United States Court of Appeals, Tenth Circuit.

May 30, 2002.

---

Before HENRY and PORFILIO, Circuit Judges, and SAM, District Judge.*

ORDER AND JUDGMENT **

HENRY, Circuit Judge.

Dr. Mina Yumukoglu sued Provident Life & Accident Insurance Company ("Provident") after a dispute arose as to Provident's failure to pay insurance benefits. The district court granted summary judgment in favor of Provident. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

In 1983, Dr. Yumukoglu, a gastroenterologist, purchased a disability insurance policy from Provident. The policy specified that Provident would make certain monthly payments to Dr. Yumukoglu in the event that Dr. Yumukoglu acquired a "total disability." Aplt's App. at 70 (Provident letter, dated June 17, 1999, at 1). Under the given policy, a "total disability" would be one that rendered Dr. Yumukoglu "unable to perform the substantial and

---

* The Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of res judicata, collateral estoppel, and law of the case. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

material duties of a [g]astroenterologist." *Id.*

In late 1997, Dr. Yumukoglu suffered a vertebral basilar stroke; the stroke left Dr. Yumukoglu experiencing certain long-term medical effects. While the parties now agree that those effects currently render Dr. Yumukoglu totally disabled within the meaning of the insurance policy, Provident was, for some number of years, not entirely convinced.

Beginning in May of 1998, Provident began paying Dr. Yumukoglu full disability benefits, though under a reservation of rights. Over the next thirteen months, Provident utilized a number of methods in attempting to evaluate the veracity of Dr. Yumukoglu's claimed total disability. These methods included Provident's review of (1) the reports of Dr. Yumukoglu's attending physicians (Drs. Palmer, Mladinich, and Burg), (2) surveillance videotape of Dr. Yumukoglu (from October 8, 1998 and January 12, 1999), (3) the reports of several Provident analysts (Drs. Geer and Curtis and Ms. Leger, a disability case manager with a degree in nursing) who compared Dr. Yumukoglu's claimed disabilities to his behavior as recorded in the surveillance videotapes, (4) the report of Dr. Yumukoglu's neuro-psychologist (Dr. Shute) in which that neuro-psychologist concluded that Dr. Yumukoglu was probably attempting to fake a poor performance (i.e.'malingering') on the tests administered by that neuro-psychologist, and (5) the report of Provident's own neuro-psychologist (Dr. Goldsmith) who likewise concluded that Dr. Yumukoglu was probably malingering. Based upon the review just described, Provident terminated benefit payments on June 17, 1999.

Dr. Yumukoglu sued Provident in New Mexico state court, alleging (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) intentional inflic-

tion of emotional distress, and (4) certain unspecified statutory violations of the New Mexico Unfair Trade Practices Act. As a remedy for the breach of contract violation, Dr. Yumukoglu sought the resumption of full disability benefit payments, all back-payments (with interest), punitive damages, emotional distress damages, and attorneys' fees. Provident, invoking diversity jurisdiction, removed the case to the United States District Court for the District of New Mexico.

On February 2, 2001, the district court granted summary judgment to Provident as to each of Dr. Yumukoglu's claims, except the alleged breach of contract. As to the (1) breach of the duty of good faith and fair dealing and (2) intentional infliction of emotional distress claims, the district court concluded that these claims required Dr. Yumukoglu to demonstrate that Provident acted in bad faith in withholding payments from Dr. Yumukoglu and that, under New Mexico law and even viewing the evidence in the light most favorable to Dr. Yumukoglu, no rational juror could so conclude. As to Dr. Yumukoglu's New Mexico Unfair Trade Practices Act claim, the district court found that Dr. Yumukoglu had failed to adequately plead a violation of any particular section of that Act.

On May 30, 2001, the district court granted summary judgment to Provident in relation to Dr. Yumukoglu's final claim, that for breach of contract. The court did so by concluding that, even assuming the validity of the breach of contract claim, Provident had already provided Dr. Yumukoglu with all of the relief available via this claim. First, the district court noted that, subsequent to the time at which Dr. Yumukoglu filed this lawsuit, Provident (on the basis of further testing conducted pursuant to this litigation) had resumed the payment of full disability benefits, including the payment, with interest, of all back-

payments owed to Dr. Yumukoglu; thus Provident had already provided the first two remedies requested by Dr. Yumukoglu as to the breach of contract claim. Second, the district court observed that the court's February 2, 2001 determination that Dr. Yumukoglu could not establish bad faith necessarily foreclosed the possibility of punitive damages. Finally, the district court concluded that, under either Louisiana or New Mexico law (whichever was applicable), Dr. Yumukoglu was not entitled to either emotional distress damages or attorneys' fees on his breach of contract claim.

Dr. Yumukoglu timely appealed. On appeal, Dr. Yumukoglu contends that the district court erred in granting summary judgment to Provident (1) as to Dr. Yumukoglu's claims of (a) breach of the duty of good faith and fair dealing and (b) intentional infliction of emotional distress and (2) as to Dr. Yumukoglu's claimed emotional distress and attorneys' fees remedies (remedies allegedly available upon establishment of Dr. Yumukoglu's breach of contract claim).

## II. DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 (10th Cir.2002). "Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Sizova v. National Inst. of Standards & Tech.*, 282 F.3d 1320, 1328 (10th Cir.2002) (quoting FED.R.CIV.P. 56(c)). Utilizing this standard of review, we con-

sider Dr. Yumukoglu's contentions of error in turn.

A. Whether the District Court Erred in Granting Summary Judgment, in Favor of Provident, as to Dr. Yumukoglu's Claims of (1) Breach of the Duty of Good Faith and Fair Dealing and (2) Intentional Infliction of Emotional Distress?

■ Under New Mexico law (which the parties agree governs the alleged (1) breach of the duty of good faith and fair dealing and (2) intentional infliction of emotional distress), Dr. Yumukoglu must demonstrate that Provident's refusal to pay rested upon an entirely "frivolous" basis. *Jackson v. Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 827 P.2d 118, 134 (1992). Demonstration that Provident relied upon such a "frivolous" basis requires evidence that Provident's decision featured "[a]n utter or total lack of foundation" and "[constituted] an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim." *Jackson*, 827 P.2d at 134; *see also Suggs v. State Farm Fire and Cas. Co.*, 833 F.2d 883, 890–91 (10th Cir.1987) (noting that, in the context of an insurer's failure to pay on a policy-holder's claim, New Mexico law defines bad faith as a "frivolous or unfounded failure to pay") (internal quotation marks omitted); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703, 709 (Ct.App.1976) (same). Given the *Jackson* standard, we conclude that the district court correctly determined that Dr. Yumukoglu offered, and could offer, no facts tending to establish such an "arbitrary and baseless refusal to pay." *Jackson*, 827 P.2d at 134.

In June of 1999, Provident concluded that Dr. Yumukoglu was not, in fact, totally disabled within the meaning of the given insurance contract. Undeniably, this con-

clusion featured at least some support in the circumstances surrounding Dr. Yumukoglu's claim: Provident's decision was not "utter[ly] or total[ly] lack[ing]" in any relevant foundation. *Id.* Specifically, Provident relied on the conclusions of Dr. Curtis and Ms. Leger, each of whom found that Dr. Yumukoglu's medical records did not support a finding of total disability. *See, e.g.*, Aplt's App. at 112 (Medical Consultant Review, completed by Dr. Curtis and dated July 26, 1999, at 3) (concluding: "[Dr. Yumukoglu] seems to be capable of performing the duties of a gastroenterologist"). Similarly, Dr. Goldsmith determined that Dr. Yumukoglu's performance during neuro-psychological testing suggested that Dr. Yumukoglu was trying to fake a brain injury. *See, e.g.*, Aplt's App. at 103 (Confidential Psychological IME Review, completed by Dr. Goldsmith and dated June 15, 1999, at 2) (concluding: "[I]t appears that [Dr. Yumukoglu] selectively responded to test items in order to influence the outcome of the evaluation and support his claim of a disabling organic disorder"). This evidence demonstrates that Provident's decision to discontinue the payment of disability benefits was not baseless.

Dr. Yumukoglu's response is to argue that a rational juror might have found these facts, even taken together, not to constitute any *reasonable* basis for the denial of benefits. The jury might have concluded, for instance, that reliance upon the mere absence of evidence of total disability (rather than requiring affirmative evidence that such a disability does not exist) is unreasonable. If Dr. Yumukoglu could establish that New Mexico law requires Provident to establish the existence of some *reasonable* basis for denying Dr. Yumukoglu's claim, then Dr. Yumukoglu's case would be a remarkably close one. After-all, reasonableness is generally a question for the jury and a rational jury,

on these facts, just might conclude that, given that Provident discontinued Dr. Yumukoglu's benefit payments without any affirmative evidence that Dr. Yumukoglu's mental state was such as to permit him to return to work, Provident lacked a reasonable basis by which to discontinue those payments. As we have concluded, however, New Mexico law simply contains no such reasonableness requirement. *See Jackson,* 827 P.2d at 134 (announcing the standard as one requiring demonstration of an *"utter or total* lack of foundation for an assertion of nonliability—an *arbitrary or baseless* refusal to pay, lacking *any* arguable support in the wording of the insurance policy or the circumstances surrounding the claim") (emphasis added); *Suggs,* 833 F.2d at 891 (reversing, under New Mexico law and on a claim of bad faith, a district court's failure to enter judgment as a matter of law—in favor of an insurance company—where the policy-holders "[did] not seriously argue that at least some evidence existed which would suggest that [one of the policy-holders] had the opportunity and the motive to set the fire").

Because no rational jury could have concluded that Provident lacked *any* basis, in the circumstances of Dr. Yumukoglu's disability claim, to discontinue the payment of benefits to Dr. Yumukoglu, we affirm the district court's grant of summary judgment, in favor of Provident, as to Dr. Yumukoglu's claims that Provident (1) breached the duty of good faith and fair dealing and (2) intentionally inflicted emotional distress.

B. Whether the District Court Erred in Granting Summary Judgment, in Favor of Provident, as to Dr. Yumukoglu's Claimed Emotional Distress and Attorneys' Fees Remedies?

The district court concluded that Dr. Yumukoglu could recover neither emotion-

al distress damages nor attorneys' fees on his breach of contract claim. The district court so concluded based upon alternative holdings: (1) if Louisiana law governs the availability of those remedies, those remedies, absent a showing of bad faith, are per se unavailable on a breach of contract claim and (2) if New Mexico law governs the availability of those remedies, those remedies, again absent a showing of bad faith, are unavailable as to Dr. Yumukoglu's particular breach of contract claim.

 Dr. Yumukoglu devotes several pages of both his opening and reply briefs to arguing that New Mexico law governs the availability of emotional distress damages and attorneys' fees as to the breach of contract claim. Dr. Yumukoglu, however, utterly fails to acknowledge, much less challenge, the district court's alternative holding that, even if New Mexico law does apply, New Mexico law does not permit recovery of the requested remedies.

We decline to venture, unassisted, into consideration of whether New Mexico law would permit recovery of either emotional distress damages or attorneys' fees as to Dr. Yumukoglu's breach of contract claim; thus we affirm the district court's conclusion that neither remedy was available to Dr. Yumukoglu. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1387–88 (10th Cir.1997) ("[Appellant] fails to address the district court's alternative ground for granting summary judgment[, in favor of the appellee, as to appellant's fraud claim]—that there was no evidence of misrepresentation.... [Appellant] has therefore conceded that there was no misrepresentation, and consequently cannot establish an essential element of its fraud claim."); *United States v. Hatchett*, 245 F.3d 625, 644–45 (7th Cir. 2001) ("In situations in which there is one or more alternative holdings on an issue, ... failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.") (internal quotation marks omitted); *see also, e.g., Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) ("[I]t is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for appeal.") (internal quotation marks omitted).

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of Provident.